# IN THE MATTER OF THE ESTATE OF H. F. WOOD, DECEASED.

WHAT IS A WILL.—The following instrument: "I wish five thousand dollars to go to John C. Cole in the event of my dying intestate, and the balance of my property to go to Robert Beatie, to be disposed of by him as his judgment may dictate," if properly executed and witnessed, is testamentary in its character, and is a will.

CONSTRUCTION OF A WILL.—If a word in a will is repugnant to the clear intention manifested in other parts of the instrument, it may be regarded as surplusage, or restricted in its application.

LETTERS TESTAMENTARY.—If the Probate Court refuses to admit a will to probate, and this Court, on appeal, directs the will to be so admitted, it will not direct the Probate Court to issue letters of administration with the will annexed to the petitioner, unless the Probate Court has found, as a fact, that the petitioner is a proper person to receive letters.

APPEAL from the Probate Court of Sierra County.

On the 27th day of May, 1868, Robert C. Beatie petitioned he Probate Court of Sierra County to admit to probate the instrument hereafter mentioned, as the last will and testament of H. F. Wood, deceased. Alfred Wood, a brother of deceased, filed his written objections to the probate of the will. On the trial the testimony of the subscribing witnesses was to the effect that on the 5th day of February, 1863, the testator, H. F. Wood, was in San Francisco, at the American Exchange Hotel, and in the public office of the hotel signed the instrument, and requested S. H. Seymour and William H. Ladd to witness the same. H. F. Wood was at that time about to go to Mexico to engage in mining. There was no evidence to show how Wood intended the instrument to be understood, except the language of the same. The Probate Court found the following facts:

1st. That said Henry F. Wood, now deceased, did on the 5th day of February, A. D. 1863, at the City of San Francisco, in the State of California, sign with his own proper hand the following written instrument, viz:

" I wish five thousand dollars to go to John C. Cole in the event of my dying intestate, and the balance of my property

to be held by Robert C. Beatie, to be disposed of by him as his judgment may dictate.                    H. F. WOOD.

"SAN FRANCISCO, Cal., February 5th, 1863.

"*Witness:* S. H. SEYMOUR, WM. H. LADD.

"Warrensville, Lycoming Co., Penn.   53 years of age."

2d. That at the time said H. F. Wood subscribed said instrument he requested S. H. Seymour and William H. Ladd to sign said instrument as subscribing witnesses thereto; and the said S. H. Seymour and William H. Ladd, did, then and there, upon said request, and in the presence of said H. F. Wood, sign the same as subscribing witnesses, and that the said S. H. Seymour, and the said William H. Ladd, were each at the time of such signing above the age of twenty-one years, and competent and credible witnesses; but it does not appear from the evidence that said witnesses knew the contents of said instrument, or heard it read.

3d. That at the time said H. F. Wood signed the said instrument he was above the age of eighteen years, to wit: between thirty and forty years old, and that he was of sound and disposing mind and memory, and not under any restraint, undue influence, or fraudulent misrepresentations.

4th. That said H. F. Wood died in Sierra County, on or about the 4th day of March, A. D. 1868, leaving property, both real and personal, in said county, and that at the time of his death he was a resident of said Sierra County.

5th. That the estate of the deceased, H. F. Wood, is and was at the time of his death of the value of fourteen thousand dollars and upwards.

6th. That the instrument propounded never was intended by H. F. Wood to be his last will and testament, and said Wood never executed it as such.

As matter of law applicable to the foregoing facts, the conclusion of the Court is, that the instrument propounded is not, and does not purport to be a will, and is not entitled to probate as the last will and testament of H. F. Wood, deceased.

*T. J. Bowers,* and *T. H. Laine,* for Appellants.

When the Court found that the instrument propounded was properly executed, it was error to hold it not to be of testamentary character. (1 Redfield on Wills, 5, Sec. 2; 1 Jarman on Wills, 1.)

"Whether a paper is testamentary or not depends upon its provisions; if they look to a disposition contingent on death, they determine the motive of the act to be testamentary. It does not depend on the maker's declaring it to be a will." (3 Bradford, 78, 101.)

Our statute does not require a publication nor a testimonium clause. (1 Redfield on Wills, 232, 233, and note.)

Under our law there is no restraint upon the power of disposition by will. (15 Cal. 256.)

A will may be couched in any language the party may see fit to use. A mere wish directed toward and operating on property is sufficient; for a will is but a legally authenticated wish. The only question submitted to the Court was: "Is this the wish or desire of the deceased (he being competent to have such wish or desire) in regard to the disposition of his property after death?" (Redfield on Wills; 1 Jarman on Wills, 13, 14.)

The Court will give some meaning to the instrument, if any can be fairly gathered from its words, with every allowable aid to construction. (1 Redfield on Wills, 433, 436.)

Again: Courts must construe wills to uphold the testator's intent. Words must be interpreted to do that. Where they are insensible in a primary sense, another must be substituted. (1 Redfield on Wills, 463, 466.)

It is only where a reasonable construction and the discovery of the testator's intent are hopeless, that all effect will be denied to the will. (1 Redfield on Wills, 468-9, 694-5; 1 Jarman on Wills, 318, 9th Am. Ed.)

Again: the whole instrument is not to be sacrificed to the single word "intestate;" for the rule is, "if words are used in a will which are insensible in the place where they occur,

or their common meaning is deserted, and no other is furnished by the will, they will be deemed surplusage and rejected." (*Wright* v. *Leon*, 10 Wheat. 239.)

"The intent of the testator is the cardinal rule in the construction of a will, and in giving effect to it, words may be rejected or so restrained in their application as materially to change the meaning of a particular sentence." (3 Pet. 346; 4 Kent, 631, 9th Ed.; *Bell County* v. *Alexander*, 22 Texas, 357.)

*Vanclief & Cowden*, for Respondent.

To entitle the instrument propounded to probate, it must appear to be a will upon its face, or be shown to be such by those extrinsic circumstances which the law permits to be taken into consideration, as aids to construction. The signing and witnessing of an instrument in the form prescribed for the execution of wills do not make the instrument a will. It must further "clearly appear," especially "where the paper is equivocal on its face, in order to be treated as testamentary, that it was intended by the maker *to operate as a disposition of his estate after death.*" (1 Redf. on Wills, 170, Sec. 7.)

"Where a paper offered for probate bears upon its face the form and character of a will, the presumption of law will be in its favor, and will thus impose upon those who contest the probate the burden of showing that it was not in fact executed *animo testandi*. And on the other hand, where the paper is not apparently designed for a will, those who claim to have it operate as such will assume the burden of showing that it was so executed, that it can fairly be allowed to have such an operation." (1 Redf. 170, Sec. 7; 172, note 22; 181, note 47, and authorities there cited.)

"If a will be uncertain or unintelligible on its face, it is as if no will had been made; *quod voluit non dixit.*" (*Mann's Case*, 1 Johns. Ch. 235.)

A will "limited by a condition as to its operation, becomes

wholly inoperative after a failure of the condition, and cannot be admitted to probate;" but in order to defeat the probate, "the condition must appear upon the face of the will, and go to its entire subversion." (1 Redf. 180, and note.)

The instrument propounded does not purport to be the last will of H. F. Wood, deceased. It is not a will unless the word "intestate" be stricken from it. This word, as employed, is not opposed to any general intent, to be gathered from the whole instrument and the circumstances in evidence, or from any portion of either; nor does it conflict with any other particular intent, expressed or implied. Indeed, the phrase, "in the event of my dying intestate," expresses the only general intent appearing from the instrument. All else is comparatively particular. The event of "dying intestate" is the general condition on which everything else is made to depend. On this general condition, Wood wished two particular things: first, "five thousand dollars to go to John C. Cole;" second, "the balance of my property to be held by Robert C. Beatie, to be disposed of by him as his judgment may dictate." Why not as well strike out the two words "dying intestate?" Logically considered, they are as closely connected as the first and second syllables of the word "intestate." But the word "dying" must be retained, since it is the only word in the instrument showing that it is to take effect after death, that being material to constitute it a will. (See 1 Redf. 425–436; *Wright* v. *Den*, 10 Wheat. 225; *Findlay* v. *King's Lessee*, 3 Peters, 374; 4 Kent, 655.)

By the Court, Sawyer, C. J.:

This is an appeal from the judgment of the Probate Court of Sierra County, refusing to admit to probate the following instrument, claimed to be the last will and testament of F. H. Wood, deceased, viz:

"I wish five thousand dollars to go to John C. Cole, in the event of my dying intestate, and the balance of my property to be held by Robert C. Beatie, to be disposed of by him as his judgment may dictate.            H. F. WOOD.

"SAN FRANCISCO, Cal., February 5th, 1863.

"*Witness:* S. H. SEYMOUR, WM. H. LADD."

The only question is, whether this is a will or not. The execution of it is satisfactorily proved, and found by the Probate Court.

After carefully considering the able argument of respondent's counsel, we are satisfied that the instrument, upon its face, is testamentary in its character, and must be construed to.be a will. It clearly fills the definition of a will given by approved writers on that branch of the law, viz: "the declaration of a man's mind as to the manner in which he would have his property or estate disposed of after death." (1 Jarman on Wills, 1. See, also, 1 Redf. on Wills, 5, Sec. 2.)

This instrument certainly declares the mind of the deceased as to the manner in which he would have his property disposed of, in case he should die after the execution of the instrument, without any other or further manifestation of his wishes. Suppose he had died within twenty-four hours after the execution of this instrument, without any change in his circumstances, or any other manifestation of his desires with respect to his property, could it be for a moment plausibly contended that the document thus executed would not express his mind and intentions as to what disposition should be made of his property? To so hold would be to assert that he drew up, signed, and called two persons to witness the execution of this instrument, in the mode prescribed by law, for no purpose whatever. He must have intended from the transaction to accomplish something. We are not authorized to suppose he designed to do a void act. The instrument shows what disposition the deceased intended to make of his property, and this disposition was not to take effect till after his death. The only possible embarrassment

arises from his inapt use of the term "intestate" in the phrase, "in the event of my dying intestate." It is argued that, if this instrument is a will, then the deceased did not die intestate, and the event upon which the property was to take the direction indicated has not, and cannot, transpire— that the word, "intestate," has but one meaning, and the deceased must be presumed to have used the word in its only recognized sense, and that he could not have intended this instrument to operate as a will; because, if he did, he would not die intestate, and he must have known that the event contemplated was impossible. But to adopt this view would be to convict the deceased of doing an absurd thing, without any apparent motive. He would then have taken the trouble to draw up and formally execute an instrument in the presence of the number of witnesses required to make a valid will, on the eve of his departure for Mexico, declaring the disposition which he wished made of his property, in case of his death, when he knew that it was impossible that the event could ever arise, upon which it could take effect; for, if he should make a will, he would not die intestate, and if the instrument executed, is a will, he would not die intestate; and if it is not a will, it would be inoperative, and would not effectuate his purpose. If a word has no meaning, or is absurd, or repugnant to the clear intention manifested in other parts, it may be regarded as surplusage, or restricted in its application. (*Bartlett* v. *King*, 12 Mass. 542; 1 Jarman on Wills, 393, and notes; *Wright* v. *Den*, 10 Wheat. 239; *Finlay* v. *King's Lessee*, 3 Pet. 376.) We see no reason why the same rule should not apply in interpreting the language of an instrument for the purpose of determining whether it is a will or not.

This instrument evidently was not drawn by an attorney. It was probably drawn by the party himself. It was very informal, and the legal term, "intestate," was undoubtedly very loosely used, and manifestly without any very accurate appreciation, at the time, of its precise meaning; and this

circumstance is entitled to consideration, with a view to a liberal interpretation. (1 Redf. on Wills, 429, note.) Upon the whole instrument, it is perfectly plain to our minds, that the deceased intended to make a disposition of his property in case of his death, and he evidently meant 'by the term, "dying intestate," dying without making any further or other will. Upon no other hypothesis can any force or effect be given to an instrument which he was so careful to execute in the presence of two witnesses, in order that it might be valid. We are not at liberty to suppose that he used a single word in the instrument in a sense that would defeat the operation of the whole instrument, which he had so anxiously prepared upon the eve of his departure upon an expedition, more or less perilous, to Mexico. Reflecting that he might not live to return, he evidently intended, in that event, to make a disposition of his property. The language used is of a testamentary character, and sufficient, under the decisions, to make a disposition of the property, upon the happening of the event contemplated. (*Morrell* v. *Dickey*, 1 Johns. Ch. 155; 1 Redf. on Wills, 173, 174, Secs. 10 and 11, and the cases there cited.) We are satisfied that the instrument is a will, and that the Probate Court erred in not admitting it to probate.

The appellant asks us, in our judgment, to direct letters testamentary to issue to the petitioner. The prayer in the petition is in the alternative, that letters testamentary, or letters of administration with the will annexed, be issued to the petitioner. He is not named executor in the will, and only letters of administration with the will annexed would be proper. But the Court below, upon the view taken, did not have occasion to determine whether it was proper to confer this important trust upon the petitioner, and the record does not afford any data upon which we are authorized to determine this important question. It must, therefore, be left open for the further consideration of the Court below.

Judgment and order reversed, and the Probate Court directed to admit the will to probate, and to take such further proceedings as the exigencies of the case require.