[No. 19203.   Department Cne. — November 2, 1893.]

## KATE MITCHELL ET AL., APPELLANTS, v. KATE DONOHUE, RESPONDENT.

OLOGRAPHIC WILL—CONSTRUCTION—PROBATE.—A written document providing that "this is to serifey that ie levet to mey wife Real and persnal and she to dispose for them as she wis" is properly construed as if it read: This is to certify that I leave to my wife my real and personal property, and she to dispose of them as she wishes," and as thus read, shows a testamentary intent, and such document, if wholly written, dated and signed by the testator, is entitled to probate as an olographic will.

ID.—INFORMAL WILL—TESTAMENTARY INTENT, HOW SHOWN.—A will may be informally drawn and may consist of one or more papers. No particular words are necessary to show a testamentary intent, it must appear only that the maker intended by it to dispose of property after his death.

ID.—PAROL EVIDENCE OF CIRCUMSTANCES—SUPPLY OF OBVIOUSLY OMITTED WORDS.—In the construction of a will parol evidence as to the attending circumstances is admissible; and obviously omitted words will always be supplied wherever the word omitted is apparent and no other word will supply the defect.

ID.— EVIDENCE—PREVIOUS TRANSFER—JEALOUS FEARS OF WIFE—APPEAL —HARMLESS RULING.—In a contest over the probate of such olographic will where it appeared that the testator had, many years previously, transferred certain real and personal property to his wife, and the contestants sought to prove that the wife became intensely jealous of her husband a dozen years or so before his death, and feared that he had transferred or would transfer all of the property to others and leave her destitute, and expressed such fears to her husband, who assured her of the contrary, but could not satisfy her, for the purpose of showing that the instrument was not intended as a will, but merely as a certificate that the husband had "left" the property that he had previously transferred to his wife subject to her disposal, a ruling by the court admitting all of this offered evidence as to what had been said and done by her within three or four years before her husband's death, but excluding all of it relating to earlier dates, is not materially erroneous or prejudicial to the contestants and is not ground for reversal of the judgment admitting the will to probate, it not appearing that the verdict and judgment could have been different if the court had ruled entirely as asked by the appellant.

ID.—INSTRUCTIONS—NATURAL RIGHTS OF HEIRS—BURDEN OF PROOF AS TO INTENTION OF TESTATOR—HARMLESS RULING.—Where the court, in a contest over the probate of a will, instructed the jury as to the manner in which the estate of the decedent would have been succeeded to and distributed in the absence of a will, and that in determining whether the paper in question was intended by the decedent as his will, they must take into consideration his mental and physical condition at the time the paper was written; who his relatives were and the claims they naturally had upon his bounty; any prior declarations which he may have made going to show his intentions as to the disposition of his property after death; and the circumstance, if it existed, that before the date of the paper he had formed in his mind a settled purpose to dispose of his property in a manner different from what the paper purported to do; and, also, all of the testimony bearing upon the question, including the contents of the paper itself; the action of the court in striking out of an instruction asked by the contestant a clause that "as to the paper the rule of law is that where an instrument is susceptible of two interpretations, one in favor of natural rights and the other against it, the interpretation favoring natural rights is to be adopted," and that if the testator had made no will "the natural rights of his brothers and sisters, and of the children of any deceased brother or sister, would entitle them to a share of his estate," and in striking out part of another instruction that the proponent of the will must prove by a preponderance of evidence that the paper was intended as a will, and that in this connection the jury might consider certain specified testimony, is not prejudiciously erroneous.

APPEAL from an order of the Superior Court of San Luis Obispo County admitting a will to probate and from an order denying a new trial of a contest as to its probate.

The facts are stated in the opinion.

*William Shipsey*, for Appellants.

The document in question is not entitled to probate as a will, because as to the subject matter there is a patent ambiguity, which could not be removed by extrinsic evidence. (Bacon's Max., reg. 23; 2 Wharton's Evidence, secs. 956, 957, 1006; 1 Greenleaf's Evidence, sec. 297; *Mann* v. *Mann*, 1 Johns. Ch. 231 and 14 Johns. 1; 7 Am. Dec. 416; *Jackson* v. *Sill*, 11 Johns. 201; 6 Am. Dec. 363; *Storer* v. *Freeman*, 6 Mass. 435; 4 Am. Dec. 155; *Avery* v. *Chappel*, 6 Conn. 270; 16 Am. Dec. 53; *Hamilton* v. *Cawood*, 3 Harr. & McH. (Md.) 437; 1 Am. Dec. 378; *Dashiell* v. *Attorney-General*, 5 Harr. & J.

(Md.) 392; 9 Am. Dec. 572; *Breckenridge* v. *Duncan,* 2 A. K. Marsh. (Ky.) 50; 12 Am. Dec. 359; *Worman* v. *Teagarden,* 2 Ohio St. 380; *Morris* v. *Edwards,* 1 Ohio, 189; *Deery* v. *Cray,* 10 Wall. 263; *Mesick* v. *Sunderland,* 6 Cal. 297; *Brannan* v. *Mesick,* 10 Cal. 95; *Poorman* v. *Mills,* 39 Cal. 345; 2 Am. Rep. 451; *Brandon* v. *Leddy,* 67 Cal. 43; *Estate of Traylor,* 81 Cal. 9; 15 Am. St. Rep. 17; *Hunt* v. *Hort,* 3 Bro. C. C. 311; *Miller* v. *Travers,* 8 Bing. 244; *Baylis* v. *Attorney-General,* 2 Atk. 239; *Taylor* v. *Richardson,* 2 Drew, 16; *Mason* v. *Bateson,* 26 Beav. 404; *Newburgh* v. *Newburgh,* 5 Madd. 364; *Clayton* v. *Nugent,* 13 Mees. & W. 200; *Gloucester* v. *Osborn,* 1 H. L. Cas. 272; *Harter* v. *Harter,* L. R. 3 Prob. & Div. 11; *Den* v. *Page,* cited in 3 T. R. 87; *Weatherhead* v. *Baskerville,* 11 How. (U. S.) 357.) The court erred in excluding evidence of transactions antecedent to the document in question. (Schouler on Wills, sec. 242; 1 Wharton's Evidence, sec. 21; 1 Greenleaf's Evidence, secs. 51 and 51 a; Code Civ. Proc. 1854; *Moran* v. *Abbey,* 58 Cal. 163.) The court erred in giving the instruction which singled out Mrs. Donohue's testimony and informed the jury that "if you believe that evidence you should answer yes." (Proffatt on Jury Trials, secs. 311–19.)

*Wilcoxon & Bouldin,* and *J. M. Wilcoxon,* for Respondent.

The document in question was a valid will. (See 1 Jarman on Wills, 45 (5th Am. ed.), and cases cited; *Estate of Wood,* 36 Cal. 75; *In re Guilfoyle's Will,* 96 Cal. 598; *Boofter* v. *Rodgers,* 9 Gill, 44; 52 Am. Dec. 680.) The obviously omitted words could be properly supplied by the court in reading the will. (See Redfield on Wills, 454; Civil Code, sec. 1325; *Cock* v. *Cooke,* 1 L. R. 1 Pro. & Div. 241; *Lucas* v. *Parsons,* 24 Ga. 640; 71 Am. Dec. 147; *Evans* v. *Smith,* 28 Ga. 98; 73 Am. Dec. 751.) The court did not err in excluding evidence of the antecedent transactions offered to show unsoundness of mind on the part of the maker of the instrument, as it was not confined to a time at or near its execution.

(See *In re McDevitt*, 95 Cal. 17; *Estate of Carpenter*, 94 Cal. 406; *Goodwin* v. *Goodwin*, 59 Cal. 560.) Even if the court did err in the exclusion or admission of evidence, the error was harmless, as the verdict and judgment could not have been different if the court had ruled throughout the trial as asked by appellant. (*Estate of Spencer*, 96 Cal. 448.)

The COURT.—For the reasons given in the opinion filed by this department June 27, 1893, the judgment and orders appealed from are affirmed.

The following is the opinion above referred to:

BELCHER, C.—Patrick Donohue died in San Luis Obispo county on the nineteenth day of February, 1892, leaving surviving his wife, the respondent, Kate Donohue, but no children, and also leaving an estate, consisting of real and personal property of the value of about fifteen thousand dollars. His heirs-at-law, other than his widow, were one sister and several nephews and nieces, children of two deceased brothers. In due time the widow filed in the superior court of San Luis Obispo County her petition in proper form, asking that a paper accompanying the petition be admitted to probate as the last will of her deceased husband. The accompanying paper, as is shown by a photographic copy thereof brought here in the record, reads as follows:

"CROLLDEPDRO, february 3, 1892.

" this is to serifey that ie levet to mey wife Real and persnal and she to dispose for them as she wis.

"PATRICK DONOHUE."

A day was set for hearing the petition, and on that day the sister and one nephew and four nieces of the decedent appeared and filed written grounds of opposition to the probate of the alleged will. The grounds stated were as follows:

1. "Said instrument is not a will, nor is it the last will or testament of said Patrick Donohue, deceased.

2. "Said instrument was not written by said Patrick Donohue freely or voluntarily, or at all.

3. "At the time of the execution of said instrument said Patrick Donohue in executing the same was under duress, menace, fraud, and undue influence, and he was not then competent to make a last will and testament; at the time of the execution of said instrument and for some time prior thereto said Patrick Donohue was at his home at Corral de Piedra in the above-named county, and was sick and in great pain and suffering of body and mind; that his wife, Mrs. Kate Donohue, who now petitions to have said instrument admitted to probate as a will, constantly and repeatedly importuned, harassed, and annoyed said Patrick Donohue, deceased, concerning his and her property and the disposition thereof, and gave him no rest, peace, or quiet upon the subject, and repeatedly urged him to transfer such property to her by deed or will; that in order to put a stop to such importunities, and thereby obtain for himself some peace, said Patrick Donohue, being by his said wife thereto coerced and unduly influenced as aforesaid, did sign the aforesaid instrument, but not intending the same as or for his last will or testament, and the same is not his testament or will."

The petitioner served and filed her answer to the opposition, fully controverting thereby all the facts alleged by the contestants.

The case was thereafter tried before a jury, and the following special issues were framed and submitted to them for decision:

1. Is the document presented for probate the last will of Patrick Donohue, deceased?

2. Was said document entirely written, dated, and signed by the hand of Patrick Donohue himself?

3. If said document was written and signed by said Donohue, was it written and signed freely and voluntarily?

4. If said document was written and signed by said Donohue, was the same executed by him under duress?

5. If said document was written and signed by said Donohue, was the same executed by him through menace?

6. If said document was written and signed by said Donohue, was the same executed by him through fraud?

7. If said document was written and signed by said Donohue, was the same executed by him through undue influence?

8. Was said document executed by said Donohue as and for his last will?

9. Did Patrick Donohue intend this paper as his last will and testament?

10. Is this paper the last will and testament of said Patrick Donohue?

To the first, second, third, eighth, ninth, and tenth questions thus submitted the jurors, by their verdict, answered yes, and to the fourth, fifth, sixth, and seventh questions they answered no.

The court adopted the findings of the jury, and in accordance therewith further found that the said document " is the last will and testament of Patrick Donohue, deceased; that it was executed in all particulars as required by law, and that said testator, at the time of the execution of the same, was of sound and disposing mind, and not acting under undue influence, menace, fraud, or duress." And thereupon an order was made and entered admitting the proposed will to probate, and appointing the petitioner administratrix of the estate of the decedent with the will annexed.

From this order and an order denying their motion for a new trial the contestants appeal.

"An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed." (Civ. Code, sec. 1277.) And such a will may be proved in the same manner that other private writings are proved. (Code Civ. Proc., sec. 1309.)

A will may be informally drawn, and may consist of

one or more papers. No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death, and parol evidence as to the attending circumstances is admissible. And courts, in reading wills, always supply obviously omitted words, wherever the word, omitted is apparent, and no other word will supply the defect. (*Estate of Wood*, 36 Cal. 75; *Clarke* v. *Ransom*, 50 Cal. 595; *Estate of Skerrett*, 67 Cal. 585; 6 Lawson's Rights, Remedies, and Practice, sec. 3140; Redfield on Wills, part 1, p. 454.)

Counsel for respondent contend that the document in question here was intended by decedent as a testamentary disposition of his property, and that it was sufficient in form to meet the requirements of the law and to justify its admission to probate as a will. As they read the paper, it is as follows:

CORRAL DE PIEDRA, February 3, 1892.

"This is to certify that I leave to my wife [my] real and personal [property], and she to dispose of them as she wishes.          PATRICK DONOHUE."

Counsel for appellants, on the other hand, contend that the document was not entitled to probate as a will, because it is vague and uncertain as to the subject matter, presenting a case of patent ambiguity which renders it absolutely void.

This contention is rested upon the theory that it cannot be determined from the face of the paper whether the word "levet" should be read as "leave" or "left," nor what real or personal property is referred to, and therefore that the construction given to the paper by respondent is unauthorized.

We are unable to see any such patent ambiguity in the language used as would render the paper void on its face. The court below evidently read the word "levet" as "leave," and supplied the word "my" before and "property" after the words "real and personal"; and in our opinion it was justified in doing so.

As thus read the paper shows a testamentary intent which entitled it to probate.

Counsel for appellants also contend that the court below committed numerous errors in the admission and exclusion of evidence.

All of these alleged errors may be considered together, and a brief statement of the facts proved and sought to be proved will be sufficient. .

The decedent and respondent were married in 1869. They never had any children. Early in 1870 they went to San Luis Obisbo county, and thereafter continued to live in that county. At the time of their marriage she had about $2,200, or $2,300, in money, but he had no money or property. In May, 1870, they commenced working for wages, he doing farm-work and she household-work, and continued in such employment until October, 1875, receiving most of the time $75 per month for their services. About the time they thus commenced working out they loaned to their employers $1,900 of her money at one and one-quarter per cent per month interest. This money and their accumulated earnings they subsequently invested in land, which they afterwards sold for about twice the sum it had cost them. In January, 1875, they purchased another tract, a part of the rancho Corral de Piedra, containing 157.79 acres. Both of them were named in the deed as grantees, and the consideration expressed therein was $8,100. In December, 1877, he conveyed to her 57.79 acres of this tract, and the consideration expressed in his deed was $2,000. He also at some time gave her a bill of sale of one horse. In 1881 and again in 1888 they purchased a few acres of adjoining land, and the parcels thus purchased in 1875, 1881, and 1888 were owned by them, and constituted their home at the time of his death. Seven or eight years before his death he made a will, but it had been lost or destroyed. By that will he devised all his property to his wife during her life, and after that it was to go to his other heirs. A few days before he wrote the

paper in controversy he became sick, resulting from an abscess in his back, and he continued to grow worse till he died. His mind, however, was clear and vigorous up to the day of his death. On the morning of February 3, 1891, he was up and sitting by the dining-room table. He asked his wife for a sheet of paper, and when he obtained it he began to write. As to what then occurred she testified as follows: " So when I saw him writing I took my chair and sat down. It was between eight and nine in the morning. When he got through writing he passed it over to me. He says: ' That's for you, for fear anything should happen, to protect you from them, because I know they will go for you. I made that will for you to save you. There is nothing there but your own hard earnings. I will tell you what to do with it. Sell it, put it in two banks, or put it in three banks, and sit down and take comfort, and don't be no longer a slave for them. It is no more than right that there should be some person in here to sign that.' There was no man I could call, and Mr. Gaxiola was off with the horses. He says: ' Never mind, take it and put it in your trunk, and put it away, and every one in town knows my signature.' " And again: " When this paper was written there was no one in the house but my husband and me. Nobody saw this paper after it was written and put in my trunk until Monday, February 22d, the day after the burial, and I did not inform a living being that it was in existence."

The contestants sought to prove that Mrs. Donohue became insanely jealous of her husband a dozen years or so before his death, and that she thereafter entertained and often expressed suspicions that he had or would transfer to others, without her knowledge or consent, all the real and personal property which he had conveyed to her, and would also dispose of his own property so that she would get nothing from it, and would be left destitute; that he and others had often told her that he had not conveyed away her property

and could not do so, and that all her suspicions and fears were groundless, but that their efforts in this behalf were futile, and failed to convince her.

The court admitted all of this offered evidence as to what had been said and done by respondent within three or four years before her husband's death, but, on objection, excluded all of it relating to earlier dates.

Counsel now insist that the paper presented as a will was not intended as such at all, but simply as a certificate that the writer "left"—that is, transferred—to his wife several years before certain real and personal property which was still hers and subject to her disposal, and that his only purpose in making the paper was to allay her suspicions that he had subsequently transferred the same property to others. And it is claimed that the action of the court in excluding the offered evidence was erroneous, because if admitted it would have tended strongly to sustain the appellants' theory as to the true meaning and purpose of the paper.

We fail to see any material error in any of the rulings complained of. The court in allowing the contestants to go over the married life of the parties for three years and more, and to show up their little disputes, bickerings and dissensions, seems to have been quite as liberal as any rule of law or common justice could require. Besides, as said in another contested will case (*In re Spencer*, 96 Cal., 448): "It is difficult to conceive how the verdict and judgment could have been different if the court had ruled throughout the trial as asked by appellants. And in such a case a judgment will not be reversed even though some errors have occurred during the progress of the trial."

Counsel for appellants further contend that the court erred in striking out and refusing to give to the jury portions of two instructions asked by contestants, and in giving a portion of one of the instructions which it gave of its own motion. The clause stricken out from one of the instructions asked was, in effect, that the proponent of the alleged will must prove by a preponder-

ance of evidence that the paper was intended by Patrick Donohue as his will, and that in this connection the jury might consider certain specified testimony. And the clause stricken out of the other instruction was that "as to the paper the rule of law is, that where an instrument is equally susceptible of two interpretations, one in favor of natural rights and the other against it, the interpretation favoring natural rights is to be adopted. By natural rights is meant the rights of the parties under the law if no will was made; and I instruct you that if Patrick Donohue had made no will, the natural rights of his brothers and sisters and of the children of any deceased brother or sister would entitle them to a share of his estate."

There was no prejudicial error in striking out these clauses. The instructions as given plainly told the jury how, in the absence of a will, the estate of decedent would have been succeeded to and distributed, and that in determining whether the paper in question was intended by the decedent as his will, they must take into consideration his mental and physical condition at the time the paper was written; who his relatives were and the claims which they naturally had upon his bounty; any prior declarations which he may have made going to show his intentions as to the disposition of his property after death; and the circumstance, if it existed, that before the date of the paper he had formed in his mind a settled purpose to dispose of his property in a manner different from what the paper purports to do; and also all of the testimony admitted in evidence and bearing upon the question, including the contents of the paper itself; and that the burden of proving that the paper was intended by the decedent as his will was upon the proponent.

These instructions, with others that followed, presented the contestants' theory as to the case very clearly and fully, and they were therefore, in our opinion, in no way harmed by the action of the court complained of.

In giving the instructions of its own motion the court

called attention to each of the special issues submitted, and, among other things, said: " The next question is, ' was said document executed by said Donohue as and for his last will ?' The only testimony that the court recalls upon that—although you gentlemen have all the testimony before you—was the testimony of Mrs. Donohue that he wrote it; he wrote it and signed, and he told her it was his will and gave it to her—but of course you are the sole judges of fact, of the evidence and the credibility of witnesses. If you believe that evidence, you should answer yes. If you do not you should answer no."

It is objected that this portion of the instruction was erroneous, because it practically withdrew from the consideration of the jury all of the evidence introduced by contestants for the purpose of showing that the paper was not executed as a will. We do not think the instruction was intended to have the effect charged, and in view of the other instructions given it seems impossible that it could have done so. As we read it, it simply calls attention to the only direct evidence as to the making of the paper, and tells the jury if they believe that evidence to be true, they will answer yes, otherwise no. All the evidence was submitted to them, and in view of it they were to determine whether Mrs. Donohue's testimony as to the execution of the paper was true or not.

The above disposes of the whole case, and it follows that the judgment and orders appealed from should be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and orders appealed from are affirmed.

PATERSON, J., HARRISON, J., McFARLAND.