McConnell v. Robbins et al.

[No. 24,179.   Filed June 20, 1923.]

1. Wills.—*Testamentary Capacity.—Statute.*—The making of a will is a personal matter, in which all persons may legally engage except infants and persons of unsound mind (§3112 Burns 1914, §2556 R. S. 1881).   p. 363.

2. Wills.—*Requisites and Validity.—Testamentary Disposition.*—An instrument giving either a vested or contingent interest in property at the time of its execution is not a will, the essence of testamentary disposition of property being that it shall not take effect during the testator's life.   p. 363.

3. Wills.—*Requisites and Validity.—Character of Instrument.—Extrinsic Evidence.—Admissibility.*—A court has no authority to make a will, and it has no rightful power to admit extrinsic evidence to add to, eliminate, or vary, the terms of a will as written, the court's province being limited to a construction of the language adopted by the maker as expressive of his intention.   p. 364.

4. Wills.—*Requisites and Validity.—Character of Instrument.—Testamentary Purpose.*—An instrument is testamentary only when, from the words used therein, it may be so declared, and the fact that the character of the instrument is not declared therein is not ordinarily influential.   p. 364.

5. Wills.—*Patent Ambiguity.—Latent Ambiguity.—Definitions.*—A patent ambiguity in a will is one which appears on the face of the instrument, which occurs when the expression of the instrument is so defective that a court of law which is obliged to put a construction upon it, placing itself in the situation of the testator, cannot ascertain therefrom the testator's intention, while a latent ambiguity is one which arises from some collateral circumstance or extrinsic matter, in cases where the instrument itself is sufficiently certain and intelligible.   p. 364.

6. Wills.—*Patent and Latent Ambiguities.—Admissibility of Evidence to Explain.*—Parol evidence is not admissible to explain patent ambiguities in a will, but is admissible to explain latent ambiguities, thus admitting evidence of the facts, circumstances and surroundings of the testator at the time he wrote the will, for the sole purpose of placing the court in a position to read the words of the will according to their true intent and meaning as purposed by the testator.   p. 366.

7. Wills.—*Testamentary Disposition of Property.—Extrinsic Evidence.—Statute.*—An instrument directing that "all debts and expenses of last illness" shall be paid first, followed by

definite directions as to the disposition of the maker's property, and signed and attested as required by §3132 Burns 1914, is a will, although it does not contain the word "devise" or "bequeath" or the expression "at my death," as it indicates that it was made in contemplation of the maker's demise, thus rendering parol evidence admissible as to the circumstances under which it was made, to enable the court determining its character to give effect to the words of the instrument as written. p. 366.

From Henry Circuit Court; *Fred C. Gause*, Judge.

Application by Bert Robbins and others for the probate of the will of Joseph F. McConnell, deceased, which was objected to by Charles A. McConnell. From a judgment for proponents of the will, the objector appeals. *Affirmed.*

*F. F. McClellan, D. D. Hensel, L. A. Guthrie* and *George F. Whitaker*, for appellant.

*James J. Moran* and *Frank Gillespie*, for appellees.

MYERS, J.—On May 10, 1920, Joseph F. McConnell departed this life in Jay County, Indiana. On May 1 prior thereto, he executed the written instrument following:

"Muncie, Ind. May 1, 1920.

"All debts and expenses incident to last illness along with any other indebtedness shall be paid first.

"One Hundred Dollars ($100.00) in cash shall be paid to Bert Robbins, Redkey, Ind. R. F. D. No. 1.

"All real and personal property to William J. and Katherine Horine (his wife).

"Joseph F. McConnell.

"Witnesses:

Will C. Moore.

D. P. Murray.

"Subscribed in my presence May 1, 1920.

"[L. S.]                    Bertha M. Smith,

"Notary Public.

"My commission expires June 30, 1920."

Application was made to the Jay Circuit Court for the probate of the foregoing written instrument as the last will and testament of the decedent. Appellant, a brother of the decedent, objected to the probate thereof for the reasons: "First, that said will was unduly executed; second, that said pretended will is not the last will and testament of said decedent, said Joseph F. McConnell." The venue of this cause was changed to the Henry Circuit Court, where a trial was had, resulting in a final judgment that the foregoing written instrument be probated as the last will of Joseph F. McConnell, deceased. Appellant's motion for a new trial was overruled, and this ruling is here assigned as error. The assigned causes for a new trial are: That the decision of the court is not sustained by sufficient evidence; that it is contrary to law; and error of the court in permitting certain witnesses, on direct examination, and over objection, to answer certain questions propounded by appellees, and in overruling appellant's motion to strike out these answers.

A brief reference to some of the evidence before the trial court may serve the purpose of a better understanding of the questions determined. In the latter part of April, 1920, the decedent entered the Home Hospital at Muncie, Indiana. His ailment was diagnosed as cancer of the stomach, and a resort to surgery was decided upon. On the morning of May 1, his home physician, Dr. Murray, called upon him at his room in the hospital. As the doctor was leaving the room to prepare for the surgery, the decedent called him back and told him that he realized he might not come through the operation all right and that it might be fatal. His physician then asked him if he wanted to make a will, and he said "Yes;" that he had some property and some things that he wanted to fix up before he went on the table, or before he was operated on. This physician

communicated this request to Dr. Moore, who went to the decedent's room, where the decedent told him he wanted to make his will. Dr. Moore obtained a sheet of paper, and, in the presence of the three whose names, together with his own, appear upon the written instrument, he wrote the instrument in question, using, as near as he could, the language of the testator, and they all signed it in the presence of each other and in the form indicated by the paper. The several answers to the questions propounded to each of the several witnesses who appear as witnesses to testator's signature were responsive, and were given over the objection and exception of appellant. As to what occurred in the room during the preparation and final completion of the written instrument, the testimony of these three witnesses is practically the same. Hence, no good purpose will be subserved by considering each question and answer separately, for they were all either proper or improper.

Appellant, by his objections to the questions, and which he reincorporated in his motion to strike out the answers, took the position that the character of the instrument in question must speak for itself. He asserts that these rulings were erroneous for the reason that the admitted evidence tended to supply words not employed by the testator for the purpose of assisting the court in determining the meaning of the instrument and intent of the testator; or, in other words, there appears upon the face of the instrument a patent ambiguity as to intent which is not subject to explanation nor can it be shown by extrinsic evidence. The instrument before us is not questioned for lack of proper execution, or conflicting provisions, or for want of identity of beneficiaries, or for insufficient description of property. Appellant bases his argument largely upon the insufficiency of the words employed to show testamentary

disposition.    He insists that the language employed was in the nature of a gift *inter vivos,* otherwise it was not effective for any purpose.    He asserts that it contains no formal words such as "devise" or "bequeath", or their equivalent, or when the persons named in the instrument shall come into possession of either class of property.    For these various defects appearing upon the face of the instrument, he earnestly contends that it is not a will, that it is void for uncertainty, and that parol evidence is not admissible for the purpose of enabling the court to correct these defects, although they may have occurred through mistake or inadvertence.

Appellant's success in this appeal depends entirely upon the face of the instrument in question showing a patent ambiguity or uncertainty that will exclude extrinsic evidence for any purpose.    Consequently, we must be understood as having the one question only in mind.    The making of wills is a personal matter in which all persons may legally engage, except infants and persons of unsound mind. §3112 Burns 1914, §2556 R. S. 1881.    It is provided by statute (§3132 Burns 1914, §2376 R. S. 1881) that —"No will except a nuncupative will shall affect any estate, unless it be in writing, signed by the testator, or by some one in his presence with his consent, and attested and subscribed in his presence by two or more competent witnesses."    It is true, as appellant insists, that an instrument which gives a vested and contingent interest upon its execution cannot be regarded as a will, for the very essence of testamentary disposition of property is that it shall not take effect during the life of the testator.    *Heaston* v. *Krieg* (1906), 167 Ind. 101, 111, 119 Am. St. 475.

It seems to us the difficulty in the case at bar, like all others of its class offering a pretense for the conten-

tion here invoked, arises from an inability to agree upon a line to be drawn between patent and latent ambiguities. If such agreement could be readily had, the opportunity for argument would be reduced to a minimum.

It is quite apparent that the instrument in question was drawn by a person who had but little, if any, knowledge of the technical requirements of such document. However true this fact may appear, it will not serve to prevent the application of the principles of law which apply generally to wills. It is not, What did he mean? but, it is, What do his words mean? *Bingel* v. *Volz* (1892), 142 Ill. 214, 31 N. E. 13, 16 L. R. A. 321, 34 Am. St. 64. A court has no authority to make a will. It has no "rightful power to admit extrinsic evidence to add to, eliminate, or vary the terms of a will as written." *Hertford* v. *Harned* (1916), 185 Ind. 213, 218. Its province is limited to a construction of the language adopted by the maker as expressive of his intention. In the instant case he did not assume to indicate the character of the instrument, but that fact is not ordinarily influential, for, if its purpose be testamentary, it cannot operate during life and is consummated only by death. Hence, it may be said that an instrument is testamentary only when, from its own wording, it may be so declared.

Courts and text-writers, following the announcement of Lord Bacon, recognize two classes of ambiguities designated as patent and latent. Schouler, in his work on Wills, says: "the one (patent) where the instrument appears ambiguous, the other where collateral matter out of the instrument breeds the ambiguity, since the instrument on its face appears certain enough. In a patent ambiguity the written instrument, or higher proof, cannot be mingled in proof

with the lower or oral, and must be construed by its own terms; but a latent ambiguity (which in truth grows out of the application of the language to facts and circumstances) is raised by matters parol, and hence may be fairly removed by the same means. But, applying this rule to a will, we shall presently find that writings of that character, which would be ambiguous (or rather uncertain) on their face without oral explanation, admit often of such explanatory proof to make their meaning obvious; * * * And, again, by ambiguity the idea is conveyed that words are capable of more senses than one; but the use of extrinsic evidence must be taken in a broader sense, and applied where the instrument points at no certain intention at all, where it is insensible, so to speak, unless this borrowed light is thrown upon it. The argument, moreover, derived from mingling proof of the higher and lower or equal quality is rather fanciful and misleading for employment in our age, antedating, as it does, the legislation of the last two centuries, which inspires our modern policy of written, signed, and attested wills. * * * For, in every case, as Mr. Jarman has truly observed, the judge by whom a will is to be expounded is entitled to be placed, by a knowledge of all the material facts of the case, as nearly as possible in the situation of the testator when he wrote it." 2, Schouler, Wills, (6th ed.) §926.

In *Grimes' Executors* v. *Harmon* (1871), 35 Ind. 198, 208, (9 Am. Rep. 690), it is said: "A patent ambiguity is one which appears on the face of the instrument, that which occurs when the expression of an instrument is so defective that a court of law which is obliged to put a construction upon it, placing itself in the situation of the parties, cannot ascertain therefrom the parties' intention. A latent ambiguity is one which

arises from some collateral circumstance, or extrinsic matter, in cases where the instrument is itself sufficiently certain and intelligible."

The consensus of opinion seems to be that a patent ambiguity is one which "arises upon the words of the will before any attempt is made to apply them to 6. the object which they describe and parol evidence is not admissible to explain such ambiguities." Schouler, *supra*. See, also, *Craven* v. *Butterfield, Rec.* (1881), 80 Ind. 503, 511; *Dennis, Admr.,* v. *Holsapple* (1879), 148 Ind. 297, 300, 46 L. R. A. 168, 62 Am. St. 526; 28 R. C. L., p. 273, §245. However, this latter conclusion must not be construed as excluding parol evidence of facts, circumstances and surroundings of the testator at the time he wrote the will. Such is not evidence *dehors* the will, but may be admitted, as we have seen, for the sole purpose of placing the court in a position to read the words of the will according to their true intent and meaning as purposed by the testator.

While the instrument before us does not contain the words "devise" or "bequeath" or "at my death", yet an unprejudiced comparison and consideration of its 7. context leads to the one thought—an act in contemplation of the maker's demise. We regard the words "last illness", found in the first sentence of the instrument, quite conclusive evidence of the intention which should govern the direction of each item therein. The word "last" modifies "illness", thus characterizing the latter as the last in succession, the end. Thus the time of effectiveness of the instrument is fixed. *In re Tinsley* (1919), 187 Iowa 23, 174 N. W. 4, 11 A. L. R. 826, it is said: "It is not necessary that there shall be express technical words of devise and bequest, or an express declaration that its provisions shall take effect only at his death, if, when read as a whole, in

the light of the circumstances under which the instrument was made, such is the reasonable meaning to be extracted from its terms." Furthermore, in *Mitchell* v. *Donohue* (1893), 100 Cal. 202, 208, 34 Pac. 614, 38 Am. St. 279, the court aptly said: "No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death, and parol evidence as to the attending circumstances is admissible." See, also, *Matter of Estate of Wood* (1868), 36 Cal. 75; Thompson, Wills §9.

After considering carefully the various principles and rulings to which our attention has been called, and from our own investigation, we are convinced that the instrument in question was the declaration of McConnell as to the manner of disposition of his property after death, and therefore obviously testamentary. The evidence admitted over appellant's objection was not calculated to take from, add to, modify or explain any of the words, clauses or provisions of the instrument asserted to be the last will and testament of Joseph F. McConnell. Hence, we conclude that the challenged evidence merely put the court in a position to give effect to the words as they were actually written.

Our conclusion upon the admission of the questioned testimony, and that the asserted will was not void for uncertainty, disposes of all the questions presented to this court. The order and judgment of the court below is therefore affirmed.