## FORD ET AL. *v.* CLEVELAND.

[No. 16,930.   Filed October 20, 1942.   Rehearing denied
December 2, 1942.]

*James H. Blackburn* and *William O. Wilson,* both of Mt. Vernon, for appellants.

*Frederick P. Bamberger* and *Edmund F. Ortmeyer,* both of Evansville (*Sanford Trippet,* of Princeton, of counsel), for appellee.

BEDWELL, J.—The appellee, Lula Holloman Cleveland, brought this action to quiet title to certain real estate in Posey County, Indiana, and named the appellants as defendants. The particular real estate involved was that described in Item 3 of the last will of George Ford, deceased, who died testate on the 27th day of February, 1927, and the appellants and the appellee are each claiming title to the remainder therein.

The appellee is an illegitimate child of the testator who was acknowledged by him to be his child during his lifetime, and she claimed that she became the sole owner of the remainder in the devised real estate as the intended devisee under the words "my heirs at law." The appellants claim that they are the "heirs at law" of the testator entitled to take such remainder. There was a trial by jury which rendered a verdict in favor of the appellee.

At the trial of the cause the trial court, over objection of the appellants, specifically stated, gave to the jury

appellee's tendered Instruction No. 1 which left to the jury the determination of whether the appellee was the sole and only "heir at law" of the decedent within the meaning of that term as used in such Item 3 of the will. The appellee contends that this was not reversible error and that the interpretation and application of the words "my heirs at law" as therein used, was a question of fact properly submitted to the jury for determination. This question and the further question of whether there was any evidence to sustain the verdict of the jury which found that the appellee was the owner of the real estate in question, are the controlling questions presented to us for determination.

Item 3 of the will of the decedent was in the words and figures as follows:

"Item 3. I give and devise to my sister, Anna B. Ford, the following described real estate in Posey County, Indiana, to-wit: Lots two, three and four in Woodlawn Addition to the Town of New Harmony, Indiana, to be held by her during her natural life and upon her death the same shall go to my heirs at law, share and share alike. My said sister is charged with the duties of an ordinary life tenant, to keep said property insured and the taxes and other liens paid against the same and she is to have full right to occupancy, rents and profits. I also bequeath to my said sister, my household goods and effects."

By Item 1 of such will the testator ordered his just debts paid.

By Item 2 thereof he gave and bequeathed to the New Harmony Bank & Trust Company of New Harmony, Indiana, as trustee, the sum of $10,000 to be held in trust for the use and benefit of his brother Lincoln Ford, during his natural life; and upon the death of Lincoln Ford, such item provided that, "said sum of $10,000 shall be paid to my heirs, share and

share alike." Such item further provided that, "In making division of said fund at the death of said Lincoln Ford, one-fifth thereof shall go to each of my brothers and sisters then living, if any, and the balance shall be divided per capita among the children of my deceased brothers and sisters; . . ." It is the contention of appellants that by this item the testator clearly defined the persons that he intended to take his property as his "heirs."

By Item 4 of the will the testator gave and bequeathed to the New Harmony Bank & Trust Company of New Harmony, Indiana, as trustee, the sum of $10,000 to be held in trust for the use and benefit of "my friend, Lula Holloman, during her natural life and at her death said trust to terminate and said sum of ten thousand dollars to be divided and distributed as is provided for the division of the funds placed in trust for the use and benefit of my brother Lincoln Ford, as set out in Item Two."

By Item 5 the testator gave his residuary estate to his brothers and sisters and the children of his deceased brothers and sisters.

The facts were without dispute. All were stipulated except the fact that appellee was an illegitimate daughter of the testator, and that he during his lifetime acknowledged her as his own; but the oral evidence upon the question of paternity and acknowledgment was without conflict.

It is a well established general rule that it is the duty of the court to construe or interpret unambiguous written instruments and to inform the jury of their legal meaning and effect, and that it is error to submit the question of their construction to a jury. *Nipp* v. *Diskey* (1881), 81 Ind. 214, 215; *Zenor* v. *Johnson* (1886), 107 Ind. 69, 70, 7 N. E. 751.

In the case of *Zenor* v. *Johnson, supra,* Judge ■ Elliott, in discussing the question of the construction of a written contract, said:

"It is error for the court to submit the construction of a written instrument to the jury, except in cases where the instrument is so ambiguous that the court can not give the instrument a reasonable construction. The court must construe all written contracts, and not leave the question of construction to the jury, except in a case where parol evidence is necessary to make the contract intelligible."

The rule that is applicable to other written instruments is applicable to wills. In 69 C. J., Wills, ■ § 1171, p. 131, the text states the rule as follows:

"Wherever doubt arises as to the meaning of a will, the construction resolving such doubt is a question of law; the construction of a will, or so much thereof as is applicable to the case under consideration, where the construction is to be gathered from the will alone or from the will and surrounding circumstances about which there is no dispute, is a question of law for the court, although the jury may decide disputed questions of fact on which the construction may depend."

Where a testator in his will uses the words "my heirs," or "my legal heirs," or "my heirs at law," and the evidence bearing upon the meaning and appli- ■ cation thereof is furnished solely by the will, it is the function and duty of the trial court to determine the meaning and application of such phrases and not to submit such to a jury. *Grantham* v. *Jinnette* (1919), 177 N. C. 229, 98 S. E. 724.

The terms "my heirs," or "my legal heirs," or "my heirs at law," when used in a will are flexible, and

should be construed so as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the terms of the will. Where the meaning the testator assigns to such terms is clearly ascertained, effect must be given to them as so used, even though such meaning is different from the legal or technical meaning. *Nickerson* v. *Hoover, Admr.* (1919), 70 Ind. App. 343, 115 N. E. 588; *Potter* v. *Potter* (1922), 306 Ill. 37, 137 N. E. 425; *Holt* v. *Miller* (1937), 11 Ohio Opinions 357, 33 N. E. (2d) 400.

There is no contention by appellee that there was any ambiguity in the will of George Ford. The appellee contends that it was the intention of the testator to devise the remainder in the real estate described in Item 3 to the appellee. With this construction of the terms of the will we cannot agree.

The testator clearly disclosed by Item 2 the persons he intended to take his property as his heirs. After he had in a sense defined his heirs in Item 2, it probably appeared to him unnecessary to repeat the definition in Item 3. The fact that he uses, in Item 3, the words "my heirs at law, share and share alike," indicates that he was referring to a class and not to the appellee. The testator in his will did not recognize or acknowledge the appellee to be his child or his heir. By item 4 he referred to her as his friend, and if he had intended that she take the remainder in the real estate devised by Item 3, he surely would have referred to her by name, or a more apt description, instead of using the phrase "my heirs at law."

We find nothing in the will or in any surrounding conditions or circumstances to reasonably indicate that

it was the intention of the testator to give the remainder of the property devised in Item 3 to the appellee.

A competent testator by his valid will has an undoubted right to dispose of his property in any legal manner that he may see fit, and it is not within the province of either court or jury to rewrite the will because they think that the disposition made was unjust. *McConnell* v. *Robbins* (1923), 193 Ind. 359, 364, 140 N. E. 59; *Hertford* v. *Harned* (1916), 185 Ind. 213, 218, 113 N. E. 727.

We think the intention of the testator when, as here, it is clearly disclosed, is controlling in determining the meaning of the words "my heirs at law," and there is no occasion to resort to the legal or technical meaning of the phrase. But if such resort is made, the appellee was not an "heir at law" of the decedent for the reason that the decedent did not die intestate. § 6-2309, Burns' 1933; *Cox* v. *Rash* (1882), 82 Ind. 519; *Stewart* v. *Wells* (1911), 47 Ind. App. 228, 232, 94 N. E. 235; *Edwards, Admr.,* v. *Beard* (1922), 77 Ind. App. 478, 134 N. E. 203.

Any right of the appellee to inherit from her putative father must be by virtue of our statute, for under the common law such right was denied. *Townsend* v. *Meneley* (1905), 37 Ind. App. 127, 74 N. E. 274; *Stewart* v. *Wells, supra.*

The first legislation in this State upon the question of the right of an illegitimate child to inherit from the father was in 1853 (Acts of 1853, ch. 53, p. 78). The statute then enacted provided:

> ". . . the real and personal estate of any man dying intestate without heirs resident in any of the United States at the time of his death or legitimate children capable of inheriting without the United States shall descend to and be vested in his illegitimate child or children who are residents of this

State or any of the United States, . . .; Provided, that the intestate shall have acknowledged such child or children as his own during his life-time, . . . ."

In the case of *Cox* v. *Rash, supra,* the Supreme Court in considering the sufficiency of the evidence to establish title to real estate by one who claimed that she was the illegitimate child of the deceased, Thomas J. Hicks, and entitled to inherit because of such statute, said at p. 520:

"It was essential, therefore, for the appellant to show, as part of her case, that Thomas J. Hicks died intestate, leaving no heirs resident in this country."

The present statute was enacted in 1901 (Acts 1901, ch. 126, § 1, p. 288; § 6-2309, Burns' 1933). It provides: "The illegitimate child or children of any man *dying intestate* and having acknowledged such child, or children during his lifetime as his own shall inherit his estate, both real and personal, . . ." (Our italics.)

Our statutes granting to illegitimate children the right to inherit from their putative father have only granted such right as to such property with respect to which the father died intestate. In the case of *Edwards, Admr.,* v. *Beard, supra,* this court recognizes that the statute in question should be liberally construed to effect the purpose of its enactment, but no room is left here for liberal construction. Liberal construction of a statute does not permit us to substiute for the words "dying intestate" the words "dying testate or intestate."

The trial court erred in submitting to the jury the question of the meaning and application of the words

"my heirs at law" as used in Item 3 of the will. It was the duty of the trial court to give a proper instruction construing this will and informing the jury of the meaning and application of the words in question, and under the evidence herein such words did not include the appellee.

There was no evidence to sustain a finding that appellee was the owner of the real estate described in her complaint, for appellee claimed solely under Item 3 of the will of Ford, and the verdict of the jury was not sustained by sufficient evidence.

The judgment is reversed and the cause is remanded with direction to the court below to sustain appellants' motion for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 44 N. E. (2d) 244.