## U.S. FIDELITY AND GUARANTY CO. *v.* BAUGH.

[No. 1268A210. Filed April 23, 1970. Rehearing denied June 1, 1970. Transfer denied December 15, 1970.]

584

*Willis Hickam, Hickam & Hickam,* of Spencer, for appellant.

*McCrea & McCrea* and *Applegate & Ream,* both of Bloomington, for appellee.

LOWDERMILK, C.J.—This is an action brought by plaintiff, appellee herein, against defendant, appellant herein, on a liability insurance policy designated as a Contractor's Operations Liability Policy.

The issues were formed by appellee's second amended complaint in one paragraph, as amended by interlineation, against appellant, United States Fidelity and Guaranty Company (herein referred to as "USF&G") on its "Schedule of Liability Policy" defining hazards insured against as "Premises—Operations" which was set out under the definition of hazards and set out immediately under said heading was the following: "The ownership, maintenance or use of premises, and all operations"; and also against the Wabash Fire and Casualty Insurance Company (herein referred to as "Wabash") on its "Combination Automobile Policy," alleging (1) the failure and refusal by USF&G and Wabash to defend appellee in an action against him filed by Robert Branum alleging Branum sustained personal injuries when a fuel oil drum attached to and a part of a truck owned by appellee, Gale Baugh, exploded while Branum was performing a welding job on the drum in Branum's shop, and alleging (2) that Branum recovered and collected a judgment from Baugh which USF&G and Wabash refused to pay.

USF&G filed its motion under Rule 1-3A to separate and separately docket the action against USF&G or, in the alternative, to require appellee to separate his complaint into two paragraphs. This motion was overruled. Appellant then

filed its demurrer to said second amended complaint, as amended by interlineation, which demurrer was by the court overruled.

Appellant then filed answer in two paragraphs in compliance with Rule 1-3, denying any obligation under its policy of insurance to defend the action brought by Branum or to pay his judgment, its motion for separate trial, which was overruled, and its motion for summary judgment, which the court overruled. Later appellant filed an affirmative Paragraph III of answer, alleging appellee's release, shortly before trial date, of appellee's claim against Wabash in consideration of $18,760. Paragraph II of the answer was later stricken by the court. Appellee filed his reply that no release would be given, but that he would give Wabash a covenant not to sue. Appellee then filed his motion for separate trial and elected that his cause of action against USF&G be first tried; this motion was sustained by the court and separate trial was ordered of appellee's cause of action against USF&G.

The action against USF&G was tried by jury, which returned a verdict for appellee in the sum of $22,519.89, upon which the court duly entered its judgment in that amount. Appellant USF&G filed its motion for new trial, which was overruled.

The facts are, briefly, that on July 30, 1960, appellee, Gale Baugh, owned business premises on West 17th Street in Bloomington, where he operated a plumbing and excavating business with trucks, bulldozers and other heavy equipment which he owned. His equipment included a 1955 Ford dump truck from which the cylinder to make the bed dump automatically had been removed and the truck was used only to haul tools and diesel fuel to service their heavy equipment. For two years or more a 55-gallon oil drum had been used as a tank to haul diesel fuel to appellee's equipment. This tank was installed in the truck where it stood on end in the left front corner of the dump bed and was anchored with

a piece of plumber's strap iron nailed with eight-penny nails to some wood which was fastened to a metal piece welded to the dump bed. It was firmly attached, but could be removed in a minute and was attached so that it would stay in place and not bump around over the truck bed when moving.

A pump about one and a half feet high in a 2-inch iron pipe weighing about forty pounds was screwed down in the top of the tank. The tank, when filled with oil, weighed about four hundred pounds.

When the truck was in motion it caused a vibration which, in turn, would crack the top of the drum around the pump.

A few days before the accident in question Donald Baugh, son and employee of appellee, had replaced the old tank with a new one and asked Robert Branum, who owned and operated a welding shop in Bloomington, if he could fix the drum so the vibration would not break the top out of the new drum, and was informed that it could be done, but not that day, and to bring the truck to Branum's place of business at a later date.

Branum was adding a new building to his welding shop and before noon on July 30th, called Donald Baugh to do some grading and level stone inside his new building to prepare it for a concrete floor. Donald Baugh loaded a bulldozer with a back-hoe onto a lowboy, which he connected to the truck and pulled from Baugh's premises to Branum's shop, which was about a mile away, where he unloaded it and used it to level the stone inside Branum's building and to grade around the outside. After this work was finished Donald parked his back-hoe on Branum's lot and Branum asked if he still wanted him to do that welding. Donald told Branum he wanted the welding done and Branum told Donald to pull the truck onto the driveway where his welding cables would reach so he could fix it and the truck was placed where directed.

Branum had told the appellee prior to July 30th to fill the barrel and the pump with oil before he was to weld it.

Branum started to weld the drum head and when he struck the arc the barrel and pump were not full of oil, and exploded, seriously injuring Robert Branum.

Appellee also held Wabash's Combination Automobile Policy which was in effect and included the truck in question and insured Baugh against liability for bodily injury "sustained by any person caused by accident and arising out of ownership, maintenance or use of the automobile."

Both insurers were notified of the accident. On May 12, 1962, Branum filed his complaint against Gale Baugh and his son, Donald Baugh, asking $100,000 damages for bodily injuries. This complaint, as amended, alleged that Donald Baugh brought a truck onto the business premises of plaintiff in Bloomington containing an oil drum which was attached to said truck, a part thereof and used in conjunction therewith for supplying fuel oil for defendants' motor vehicle and tractors in connection with defendants' business operations, and employed plaintiff to perform the welding job on said barrel, consisting of attaching a metal brace to the pump on top of the barrel and attaching said metal brace to the edge of the barrel to brace the pump. Plaintiff's amended complaint alleged further that Baugh represented that he had complied with prior instructions of Branum to fill the barrel and pump with oil before the welding operation could be performed, but unknown to Branum the pump and drum contained vapors of highly volatile substance and the drum exploded when Branum began welding operations and thereby injured him. There were further acts of negligence charged against the Baughs, one of which was that the Baughs failed to warn Branum that the barrel and pump were not full of oil and that the statement that the pump and drum were filled with oil was either false, or made without sufficient knowledge as to its truth to warrant Branum's reliance thereon.

In the case now before us we are not concerned with whether appellee Baugh was liable to Branum for the negligence

charged in Branum's complaint. The question is *whether Branum's complaint alleged facts to support a finding that his injury was caused by accident arising out of the hazards insured against in USF&G's policy.*

The parties hereto agree in their respective briefs that the court correctly instructed the jury in this cause now before us that there was no evidence that Branum's injuries were caused by accident arising out of the "ownership, maintenance or use" of the premises described in the USF&G policy. The parties further agree by their briefs that this eliminated coverage under the policy except *"all operations."*

Appellant's motion for new trial is as follows:

"The defendant United States Fidelity and Guaranty Company moves the court for a new trial herein on each of the following grounds:

"1. Error in the assessment of the amount of recovery, in this, the amount thereof is too large.

"2. The verdict of the jury is not sustained by sufficient evidence.

"3. The verdict of the jury is contrary to law.

"4. Error of law occurring at the trial, as follows:

"(a) The court erred in refusing to permit this defendant to read in evidence from the discovery deposition of Donald Baugh, taken on behalf of this defendant, only that portion beginning with the last line on page 4 and including all of pages 5, 6 and 7, and from lines 1-20 on page 8. Upon defendant's offer to read that part only of said discovery deposition, plaintiff objected to reading any portion of the deposition unless read in its entirety. The court's ruling on the offer and objection was: 'If you want to read it, read it, the whole thing.'

"* * *

"(c) The court erred in giving to the jury, at the request of the plaintiff, each of plaintiff's instructions numbered 1 and 5, and to the giving of each of which instructions this defendant duly objected within the proper time by stating its specific objections to each of said instructions after the court had indicated the instructions it would give to the jury.

"5. The court erred in overruling this defendant's motion, made at the close of plaintiff's evidence, to instruct the jury to return its verdict for this defendant.

"6. The court erred in overruling this defendant's motion, made at the close of all of the evidence, to instruct the jury to return its verdict for this defendant.

"7. The court erred in overruling Part I of the Separate Motion of Defendant United States Fidelity and Guaranty Company under Rule 1-3A directed to Plaintiff's Complaint, being its motion to separate and separately docket plaintiff's cause of action against this defendant.

"8. The court erred in overruling Part I of the Separate Motion of Defendant United States Fidelity and Guaranty Company under Rule 1-3A directed to Plaintiff's Second Amended Complaint, being its motion to separate and separately docket plaintiff's cause of action against this defendant.

"9. The court erred in overruling this defendant's Demurrer to Plaintiff's Second Amended Complaint.

"10. The court erred in overruling this defendant's Motion for Summary Judgment."

The memorandum to the motion for new trial is paraphrased and set out herein on pages 9 and 10.

Appellant's motion for new trial was overruled and this appeal ensued.

Appellant's assignment of errors is as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to appellant, in this:

"1. The court erred in overruling appellant's motion for a new trial."

Appellant urges only a part of the errors assigned, which are: (1) The verdict is not sustained by sufficient evidence; (2) The verdict is contrary to law; (3) Error in giving instructions; (4) Refusal to direct a verdict; (5) Overruling demurrer to second amended complaint; and (6) Overruling defendant's motion for summary judgment.

Appellant having expressly waived all other specifications of error as set out in its motion for new trial, the same have been waived under Supreme Court Rule 2-17 and will not be considered in this opinion.

We shall cover each of these specifications, not as set out numerically herein, but as each claimed error arose during the course of the proceedings.

Appellant summarized its demurrer to appellee's second amended complaint as follows: The first ground was for misjoinder, stating that several causes of action have been improperly joined in that (a) an action against USF&G on its separate policy to which policy Wabash is not a party, is joined with (b) an action against Wabash on its separate policy to which USF&G is not a party; (c) any cause of action plaintiff asserts against USF&G under its policy is a separate cause of action from the one plaintiff asserts against Wabash under its policy and plaintiff may not join two separate and distinct causes of action in the single complaint; (d) if USF&G is liable to plaintiff at all it is severally liable only under its policy and Wabash is not liable under that policy and (e) if Wabash is liable to plaintiff at all it is liable only under its policy and USF&G is not liable under that policy.

Part II of the demurrer assigns that the second amended complaint did not state sufficient facts to constitute a cause of action against USF&G. The memorandum assigned reason (1) USF&G's policy shows on its face that the only protection afforded by the policy is the ownership, maintenance or use of premises, and all operations, and under exclusions the policy does not apply to the ownership, maintenance, operation or use of automobiles if the accident occurs away from such premises or the ways immediately adjoining; (2) it is alleged in Robert Branum's complaint, Exhibit C, that Donald Baugh drove his truck onto the Branum premises where the accident giving rise to Branum's alleged injuries occurred; (3) the accident in question was not alleged to be

caused by the ownership, maintenance or use of Baugh's premises at West 17th Street which is specified in the policy, or from any operations on the ways immediately adjoining, but occurred on the business premises of Robert Branum; (4) Branum complaint does not allege an injury within the coverage of USF&G's policy; (5) the cause of action alleged in Branum's complaint is within the exclusionary clause in USF&G's policy; (6) the damages recovered by Branum were not caused by an accident arising out of the hazards against which the USF&G policy insured plaintiff Gale Baugh; (7) on the facts alleged in the second amended complaint USF&G was not under any duty to defend plaintiff Gale Baugh against the claim for damages asserted by Branum and for which Branum recovered judgment.

Appellee contends that appellant waived the specification of error by not setting forth the plaintiff's second amended complaint in full in the record and in the brief. Appellant's brief contains a very full and well stated summary of the second amended complaint and we are of the opinion that the same complies with the Rules and appellee's objection is not well taken. The current Rule 2-17 became effective February 1, 1967, and provides:

"(e)  It shall be unnecessary to set out the entire record or the bill of exceptions with the evidence in the brief in a separate section thereof. In lieu thereof, the appellant shall set forth a summary of the evidence and the record which he believes to be pertinent to the issues involved in the initial portion of the argument section of the brief, with specific reference to the line and page in the transcript where such evidence may be found or the pleadings or other paper may be found. * * *

"(f)  A summary statement of the record and of the evidence in the brief shall be taken to be accurate and sufficient for a full understanding of the questions presented for a decision unless the opposite party in his brief shall make the necessary corrections and additions, pointing out with specific citations in the transcript and line any corrections or additions."

This Rule was discussed in *Minne* v. *City of Mishawaka* (1968), 251 Ind. 166, 240 N. E. 2d 56:

"Rule 2-17, in its present form, is intended to require an appellant to include in his brief only 'a summary' of those matters which are 'pertinent to the issues involved.' Where an appellant is alleging on appeal that the trial court erred in overruling his demurrer to the appellee's complaint, he is no longer required to set forth in his brief the entire demurrer and memorandum in support thereof. He may summarize them for the Court and refer to the page and line of the transcript where they may be found.

"The philosophy underlying Rule 2-17, as amended, is to allow this Court to be informed as to the issues at hand without unnecessarily having to wade through a morass of pleadings and testimony which are already contained in the transcript of the record. In compliance with that philosophy, it appears that the appellants have fully summarized the appellees' complaint in their brief and have informed this Court that a demurrer to such complaint was filed, the ground therefor, and the disposition thereof in the court below. Therefore, no proper grounds exist for dismissal of the appellants' appeal from the overruling of their demurrer."

The first ground of the demurrer was for misjoinder of causes of action. The court did not commit any error in overruling the demurrer on the ground of misjoinder, as the same is covered by statute, which reads as follows:

Burns' § 2-1009 "Misjoinder not ground for reversal. No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action."

In the case of *Langsdale* v. *Woollen, Administrator* (1889), 120 Ind. 16, the court said:

"But if it were conceded that the court erred in overruling the demurrer there would be no available error, for it is expressly provided by statute that no judgment shall be reversed for error committed in sustaining or overruling a demurrer for misjoinder of causes of action." See, also, *Essex* v. *Hopkins* (1912), 50 Ind. App. 316, 98 N. E. 307.

Appellee, in his second amended complaint, further alleged that appellee performed on his part all conditions of said policy required of the appellee. This is a rather broad and ambiguous allegation, but, like USF&G's policy, it may be susceptible to interpretation and we believe the second amended complaint is not sufficient to withstand the demurrer.

Exhibit C to plaintiff's amended complaint is the second amended complaint of Robert Branum versus Gale Baugh and Donald Baugh, filed May 12, 1962. Rhetorical paragraph 3 of said amended complaint of exhibit reads as follows:

> "That on the 30th day of July, 1960, Donald Baugh, the agent of Gale Baugh drove a truck onto the business premises of the plaintiff at 611 North Morton Street, Bloomington, Indiana, containing an oil drum and employed the plaintiff to perform a welding operation on said barrell [sic]; consisting of attaching a metal brace to the pump located on top of the barrell [sic] and attaching said metal brace to the edge of the barrell [sic] to brace the pump."

On July 19th, 1963, Robert Branum amended paragraph 3 of said complaint by interlineation, as follows:

> "Paragraph III in the third line after the words 'containing an oil drum' amends said complaint by adding 'which was attached to said truck, a part thereof, and used in conjunction therewith for supplying fuel for defendant's motor vehicles and tractors in connection with defendant's business operation' and preceding the words, 'and employed the plaintiff to perform a welding operation on said barrel'."

The second amended compaint of Gale Baugh versus USF&G on which this appeal was taken, alleges that neither USF&G nor Wabash took any action to investigate demands made by Branum and when Branum's complaint was filed on May 12, 1962, the plaintiff Baugh again notified Wabash and USF&G of their contingent liability and called attention to the clause in the insuring agreement which appeared in each policy to the effect that the insurer would defend any suit against the insured alleging injury and seeking damages on

account thereof, even if the suit is groundless, false or fraudulent. This brings us to the consideration of reasons 4, 5, 6 and 7 as set out in Part II of USF&G's demurrer to the second amended complaint in this action.

First, let us look at the policy which, under Insuring Agreements, Definition of Hazards, II Defense, Settlement, Supplementary Payments, reads:

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the Company shall:

(a)　defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent;* but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;" (Our emphasis.)

The insurer's liability and duty to defend under the policy has a divergence of holding throughout the separate states.

50 A.L.R. 2d, page 497, B. Conflict between allegations and known or ascertainable facts, reads:

"§ 17.　Generally.

"The general rule to the effect that the determination of whether or not the claim made against the insured is one which by the terms of the contract the insurer is required to defend depends upon the facts stated in the complaint or petition in the action against the insurer is based upon the ordinary or typical situation in which there is no conflict between the facts as alleged in the petition and the actual facts as they are known to or ascertainable by the insurer. In other words, the general rule as stated above does not take into account the possibility that such a divergence may exist; in fact, the rule may affirmatively presuppose the absence thereof. Consequently, the cases supporting the rule are of hardly any value as authority in a situation where such divergence does exist.

"There are, however, a number of cases in which the question was expressly in issue whether or not the allegations in the complaint against the insured determine the insurer's liability to defend where such allegations are in

conflict with the actual facts as known to or ascertainable by the insurer. These cases are in direct conflict with each other, with California, Massachusetts, Mississippi, Ohio, Rhode Island, and the District of Columbia adhering to the more logical view that the allegations in the complaint remain determinative of the insurer's duty to defend even though the actual facts are to the contrary, while Missouri, Oklahoma, Pennsylvania (in lower court's decisions), and Texas apparently favor the opposite view that the actual facts as known to the insurer determine the insurer's duty to defend where they are in conflict with the allegations of the complaint. New York supports the rule favoring the allegations over the facts, but there is a dictum in at least one case which seems to embrace the opposite theory. It should be noted in this connection that, as a whole, the number of cases from the various individual jurisdictions is too small at present to permit definite conclusions to be drawn and the above enumerations are intended to indicate trends rather than well-established rules.[15]

---

15. ". . . With respect to the cases actually applying the veiw stated in § 18, infra, namely, that the allegations of the complaint in the injured persons' suit determine the insurer's duty to defend, they appear to be about equally divided between those in which such allegations indicated that the claim was within the policy's coverage and those which indicated that it was not. Whether a case in which it appeared that the allegations of the complaint in the injured person's suit indicated that the claim was outside the policy's coverage, and in which the insurer was held bound to defend when it discovered facts indicating that the claim was actually within such coverage, is good authority for the proposition that the insurer may decline to defend in the converse situation, that is, where the allegations in the complaint indicate that the claim is within the policy's coverage but the insurer has knowledge otherwise acquired that the claim is actually outside the coverage, quaere? Certainly there are few, if any, cases in which the language used indicates the court's conscious and deliberate conclusion that the two propositions (1) that the insurer is entitled to rely on allegations in the complaint which indicate that the claim is not within the policy's coverage and refuse to defend the injured person's suit, despite outside knowledge indicating that the claim is within such coverage, and (2) that where the allegations in the complaint indicate that the claim is within the policy's coverage, the insurer is bound to defend the action despite outside knowledge that, as a matter of fact, the claim is not within such coverage, are equally sound."

The one Indiana case we find which is in point and which still seems to be the rule in Indiana is *Mitzner et al* v. *Fidelity & Casualty Co., et al.* (1931), 94 Ind. App. 362, 154 N. E. 881, Transfer denied 5/11/32.

This case was an action on an insurance policy for breach of a stipulation contained therein obligating the insurance company to defend any suit brought against the insured for damages growing out of the operation of the automobile covered by said policy.

The material facts were that one Ruth Mitzner, a girl under the age of 16 years, climbed into the insured motor vehicle and over the protest of the person in charge thereof, proceeded to drive on the public streets and drove said vehicle against another, thereby injuring him. "Notice was at once given appellee insurance company of said accident, and it, after an investigation of the facts had been made by a representative, denied all liability under its said policy on account of said accident." The insured was sued and successfully defended, but at a cost of $1,056.05. Suit was then brought to recover expenses of the suit and the right of recovery is the only question involved in the case.

By the terms of the policy in suit the insurance company undertook to indemnify the insured against loss for liability imposed by law upon the insured " 'for damages on account of bodily injuries or death suffered by any person or persons as the result of an accident occurring while this policy is in force' " et cetera. The policy specifically provided " 'This policy does not cover loss from liability for, or any suit based on, injuries or death—(1) caused by any automobile while operated by or while in charge of any person who is either under the age fixed by law for drivers of automobiles, or who is in any event under the age of sixteen years' ", et cetera.

The court held that there was no ambiguity in the clause of the policy and it was not open for construction and that the driver being under the age of 16 years, said policy did not cover such operation of said automobile; it was without the coverage of said policy and there was no duty upon the insurance company to defend said damage suit and there was no liability for expenses thereof.

This case is distinguishable from the present case in that the insurance company, in *Mitzner,* made a complete investigation of the facts before denying liability under its policy, while in the present case USF&G declined to act further than to decline liability under its policy. There is a further distinction in that the insurance policy in the *Mitzner* case was not ambiguous.

It is now incumbent upon this court to determine whether the courts will require an insurer to defend after considering only the allegations of the complaint or shall require the insurer to defend after considering the allegations of the complaint and after having made a preliminary investigation of the facts of the incident complained of in the complaint.

At least one earlier case seems to have adopted the rule in Indiana that the insurer had only to look to the allegations of the complaint and if they were inadequate under the policy to require a defense the insurer could decline to defend. *Southern Surety Co. v. Columbian Ins. Co.* (1922), 78 Ind. App. 179, 133 N. E. 611.

Continued application of such rule, laid down in *Southern Surety Co.* v. *Columbian Ins. Co., supra,* could lead to fraud perpetrated upon the insurer in that allegations of the complaint could be intentionally framed to force the insurer to appear and defend. This could be true even though the insurer made its investigation of facts and conditions surrounding the incident sued on and determined that there was no coverage.

On the other hand, considering the new Rules of Procedure in Indiana which became effective January 1, 1970, an injured party could file a complaint, complying with the rules, and have a good complaint, but with such brevity that the insurer could not determine whether there was coverage under its policy or not.

In the case of *Leonard* v. *Maryland Casualty Co.* (1944), 158 Kansas 263, 146 P. 2d 378, the court said:

"From these decisions, constituting the great weight of authority, the duty of the insurer under an automobile liability policy to defend an action for damages against its insured is not measured by the proof which may be adduced at the trial nor by the outcome of the litigation but by the allegations of the petition or complaint in the action and by the terms and provisions of the insurance contract. If the rule were otherwise an insurer would be obliged to defend every type and character of action instituted against every insured although the basis or ground of such action was wholy outside the coverage of the policy. Such a conclusion would render the exclusion clause a complete nullity and would therefore result in making a new contract for the parties which, of course, we are not at liberty to do.

"In the instant case the trial court agreed appellant had no duty to defend under the allegations of the original petition but held that such duty arose under the averments of the amended petition. Its theory was the amended petition enlarged the issues by alleging gross and wanton negligence on the part of the insured instead of simple negligence pleaded in the original petition and hence the amended petition made Leonard (the insurer) liable to plaintiff under our 'guest statute'.

"It has been held that where an action of an injured person is based upon various grounds which are not within the terms of the policy, and on another which is within its terms, the situation does not justify an insurance company in declining to defend. Christian v. Royal Ins. Co., 185 Minn. 180, 240 N. W. 365, Maryland Casualty Co. v. Moritz, supra. . . ."

Referring once again to *Mitzner* v. *Fidelity & Casualty Co.*, *supra*, we reiterate that this court had before it and approved the action of the insurance company in not only looking to the allegations of the complaint to determine coverage under its policy, but also in making a preliminary investigation of the facts. We might determine from this that the Indiana rule is that before the insurer can successfully deny coverage under its policy that it look to the allegations of the complaint and make its investigation under the facts.

The practice of insurance companies in Indiana in investigating reported claims where there is, or they believe there

may be, a policy violation in taking a general waiver of their named insured or handling the same under an express reservation of rights is so commonplace that we are of the opinion it needs no citation of authority to justify the practice.

It is our opinion that the better rule for the protection of insurer and insured, to avoid any fraud, under the present day rules of pleading, *supra,* and to avoid much litigation, is that Indiana adopt the plan wherein the insurer determines its liability under its policy from the facts ascertainable, based on a reasonable investigation.

We shall consider specifications 4, 5, 6 and 7 of appellant's demurrer as summarized and set forth in its brief, which reads as follows, to-wit:

"(4) the Branum complaint does not allege an injury within the coverage of USF&G's policy; (5) the cause of action alleged in Branum's complaint is within the exclusionary clause in USF&G's policy; (6) the damages recovered by Branum were not caused by an accident arising out of the hazards against which the USF&G policy insured plaintiff Gale Baugh; (7) on the facts alleged in the second amended complaint USF&G was not under any duty to defend plaintiff Gale Baugh against the claim for damages asserted by Branum and for which Branum recovered judgment."

The rules of construction laid down by this court and the Supreme Court of Indiana require the contract must be construed most favorably to the appellee.

The appellee is engaged in the excavation and construction business and construing the contract most favorably to him it would appear that appellee was justified in believing that this policy, being a Contractor's Operations Liability Policy, would cover all of his operations.

Under the insuring agreements, definition of hazards, Division 4—Products—Completed Operations, the policy states:

"(1) * * *

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from

premises owned, rented or controlled by the Named Insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the Insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in Division 1 of Item 4 of the declarations specifically includes completed operations."

Under the exclusions of the policy it states:

"This policy does not apply:

"(a) Under Division 1 of the Definition of Hazards, and under Coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the Named Insured; except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, or (3) watercraft;

"(b) under Division 1 of the Definition of Hazards, to elevators;

"(c) under Division 1 of the Definition of Hazards, and under Coverage C, to (1) the Independent Contractors Hazard or (2) the Products-Completed Operations Hazard;"

Under definition of hazards and sub-topic, Division 1 Premises—Operations the words "and all operations" standing at the end of the sentence would lead the average layman to believe that all his business operations were covered, unless clearly and specifically excluded.

When reading Division 4—Products—Completed Operations, the average layman would, in all probability, become very confused as to what constitutes "operations" and "completed operations". Applying specification 2 of Division 4 to the case at bar, one could reasonably conclude that there was

coverage for the named insured, appellee herein, from the following words: "operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Named Insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) * * * (b) *the maintenance of vehicles owned or used by or in behalf of the insured,* (c) * * *" (Our emphasis.)

The prime question to be determined was whether the oil drum was or was not a part of the truck.

Under specification 7 of the demurrer the appellant said "on the facts alleged in the second amended complaint USF&G was not under any duty to defend plaintiff Gale Baugh against the claim for damages asserted by Branum and for which Branum recovered judgment."

Again, referring to rhetorical paragraph 3 of the *Branum* v. *Baugh* complaint, wherein plaintiff alleged the truck was driven on the business premises of the plaintiff and contained an oil drum and the plaintiff was employed to perform a welding operation on said barrel consisting of attaching a metal brace to the pump on top of the barrel and attaching said metal brace to the edge of the barrel to brace the pump, we are of the opinion that the demurrer was not well taken, but such operation would have been covered under USF&G's policy with Mr. Baugh, as covered under Insuring Agreements, Division 4—Products—Completed Operations:

"(1) Goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the Named Insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the Named Insured or on premises for which the classification stated in Division 1 of Item 4

of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Named Insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph (a) pick-up or delivery, except from or onto a railroad car, (b) *the maintenance of vehicles owned or used by or in behalf of the Insured*, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in Division 1 of Item 4 of the declarations specifically includes completed operations."

A reasonable construction of this provision of the policy would preclude the oil drum setting in the truck from being a part of the vehicle which was taken to the garage for maintenance. However, in our opinion, the plaintiff, in *Branum* v. *Baugh,* when he amended his complaint by interlineation and made paragraph 3 read that *said oil drum was attached to said truck, a part thereof, and used in conjunction therewith* for supplying fuel for defendant's motor vehicles and tractors in connection with defendant's business operation, alleged the oil drum was a part of said truck and attached to it when it was driven into Branum's shop to be repaired, that under the allegations of the complaint as amended by interlineation the pleading was sufficient and he is bound by the admission and allegation that the drum was attached to and made a part of the truck in question. Coverage was excluded under the policy and the policy did not apply to the ownership, maintenance, operation or use of automobiles if the accident occurred away from the premises or the ways immediately adjoining.

We have heretofore determined the Indiana rule on the question of the insurer's liability and duty to defend under the policy, requires the insurer to look to the allegations of the complaint and also make its independent investigation of facts and to look to said complaint and ascertainable facts in determining its duty to defend under the policy. Although USF&G did not make any investigation but looked only to the allegations of fact, we are constrained to hold that that was all that was necessary in the case at bar. The differentiation being that the question was raised by appellant's demurrer to plaintiff's second amended complaint as amended by interlineation and the court could only look to the allegations of the complaint, which complaint included, as Exhibit C thereof, a copy of the insurance policy, and what may have been determined by an investigation of the facts could not have been considered at that time, although the jury on the trial of the cause did find, by its general verdict, that the oil drum was not a part of the truck. The court, in passing on the demurrer had no opportunity or right to consider anything other than the demurrer and pleadings before it. Any investigation made by the insurance company at that time could not have been made available to the trial court.

For the reasons heretofore given we are of the opinion that appellee's second amended complaint, as amended by interlineation, alleged no duty on USF&G to defend its policy and that said second amended complaint did not state a cause of action, and that the court committed error in overruling the demurrer.

This court having heretofore determined that the jury by its general verdict after the trial of this cause necessarily held that the oil drum was not a part of the truck, this brings us to answer the question of whether or not the error in overruling the demurrer was prejudicial.

On this proposition, we first looked at a statute, Burns' Ind. Stat. § 2-3231, which reads, in part, as follows:

". . . nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

and, also, Indiana Rules of Procedure, Rule AP. 15 (D), which reads, in part, as follows:

". . . nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

In *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. 2d 875, the amended complaint alleged that the appellee was a guest of the appellant in an automobile operated by him and that without stopping, looking, or slacking his speed, the appellant drove his automobile upon a railroad crossing, with which he was familiar, at 40 miles per hour in the night time, when a locomotive was proceeding over the crossing at 2 miles per hour, and when a flasher signal displaying red lights was operating and clearly visible to him.

The court said:

"Before we would be justified in reversing the judgment for error in overruling the demurrer, we would have to determine from the whole record that the appellant was prejudiced thereby. § 2-3231, Burns' 1933, . . . There is evidence in the record, which was admitted without objection, to the effect that the appellant was warned of the danger which confronted him by the other occupants of the automobile in time sufficient to have avoided the accident, but that he made no effort to stop the automobile or reduce its speed. These facts must be considered with those alleged in the amended complaint in determining whether the appellant was harmed by the ruling on his demurrer. [citing cases] The complaint might have been amended after trial to conform to the proof."

This court having considered the evidence in the case be-before it, the statute in effect at the time the court ruled on

the demurrer, and the new Rules, and the reasoning ■ and holding in *Bedwell* v. *DeBolt, supra,* now determines that the complaint is considered amended to comply with the proof and that this court would not be justified in reversing the trial court for the error in overruling the demurrer, as the overruling of the demurrer was not prejudicial.

We shall now discuss the remaining errors assigned by appellant.

Appellant's motion for summary judgment was overruled by the court and of course appellant's contention was that there was no genuine issue as to any material fact. Appellant's contention is supported by the affidavit of Charlton M. White, who, at the time of making the affidavit was an employee of Woodward Insurance, Inc., the broker through whom the USF&G policy mentioned in the amended complaint in the case was issued. Mr. White was responsible for handling the account for said policy and all records of the Woodward Insurance, Inc., in connection therewith. Mr. White's affidavit was to the effect that he had no notice or knowledge of the occurrence of the accident on July 30, 1960, wherein Robert Branum was injured, until the 8th day of January, 1962, when notified by Donald Baugh, son of the appellee.

Appellant's contention is further supported by the affidavit of Loren M. Beasley, adjuster for USF&G, maintaining an office in the Citizens Bank Building in Bloomington, Indiana, being the same building in which Woodward Insurance, Inc., maintained its office. Affiant Beasley, in his affidavit, said that he first learned of the loss in question on January 8, 1962, when Donald Baugh came to his office and showed him a letter from an attorney, setting out the date of the accident as being on July 30, 1960.

Appellee filed the counter-affidavit of Grace Baugh, wife of appellee Gale Baugh, in which she deposed that in August of 1960, Gale Baugh told her that he had phoned Loren M.

Beasley and at that time asked her to take some papers to Mr. Beasley's office, which included the involved insurance policy.

At that time Mrs. Baugh, in August of 1960, proceeded to the Citizens Bank Building at Bloomington and to Mr. Beasley's office and passed the Woodward Insurance, Inc., in the same building, and talked personally with Mr. Beasley.

Mr. Beasley discussed the fact that USF&G might not be liable because of the oil barrel.

Mrs. Baugh said further that she presented the papers pertaining to the loss to Mr. Beasley, expecting his examination of said papers, but that he folded them up and placed them on his desk and asked her no further questions about the accident.

Affiant said further that appellee Gale Baugh suffered a cerebral hemorrhage resulting in a stroke on July 4, 1962, and that his memory is now bad, inaccurate and incomplete.

There is no record of an affidavit of Mr. Gale Baugh.

Burns' Ind. Stat. § 2-2524 is patterned after Federal Rule of Civil Procedure 56 and this court looks to the Federal cases for guidance as well as the cases handed down on this proposition in the State of Indiana.

The basic purpose of the Indiana summary judgment statute is to provide a procedural device for a prompt disposition of cases where there is, in reality, no genuine issue of fact to be determined in the trial, either by a court or a jury.

"However, as stated by the United States Court of Appeals for the 7th Circuit, in dealing with summary judgment:

'In deciding whether there is an issue of material fact in a case, *all doubts* must be resolved against the party asking for a summary judgment.' *Greenbaum Mortgage Co.* v. *Town & Country Garden Association* (7th Cir., 1967) 385 F. 2d 347. (Emphasis supplied.)

"Our Supreme Court, in *Kapusta* v. *DePuy Mfg. Co.* (1968),

249 Ind. 679, 234 N. E. 2d 487, in denying petition to transfer said, in construing Section (e) of our Summary Judgment Act, *supra,* the following:

" 'We construe the words 'if appropriate' in subsection (e) in light of subsection (c) *to still require a finding that there is no genuine issue as to any material fact, whether or not counter affidavits are filed.* Our statute is patterned after Federal Rule of Civil Procedure 56 and we believe the Advisory Committee's Notes of 1963 to the last two sentences of subdivision (e) are appropriate: '* * * The amendment [is not] designed to affect the ordinary standards applicable to the summary judgment motion.' " (Our emphasis.) *Houston* v. *First Federal Savings & L. Ass'n of Gary* (1969), 144 Ind. App. 304, 246 N. E. 2d 199; *Carter* v. *Williams* (7th Cir. 1966), 361 F. 2d 189; *Pierce* v. *Ford Motor Co.* (4th Cir., 1951), 190 F. 2d 910.

We are constrained to hold that there was a triable issue of fact presented to the court by the affidavits and counter-affidavits and that the trial court did not err in overruling appellant's motion for summary judgment.

Appellant, USF&G, at the close of the appellee's evidence in chief, filed its written motion for a directed verdict, reserving the right to introduce its evidence in the event the court overruled its motion for the directed verdict. The motion was overruled and at the close of all the evidence USF&G filed its motion for a directed verdict. We shall consider both of these motions together.

"If a defendant in an action, upon the close of the plaintiff's evidence in chief, moves the court to direct a verdict on such evidence in his favor, he must stand by his motion; for, if he subsequently introduces his own evidence, he will be regarded as having waived or receded from his motion, and therefore no question can be considered under such motion on appeal. *Baltimore, etc., R. W. Co.* v. *Conoyer* (1898), 149 Ind. 524, 527, 48 N. E. 352, 49 N. E. 452." *Indiana Insurance Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003.

This court, in determining the sufficiency of the evidence, must look to that evidence offered by the plaintiff below. In

this consideration we accept as true all facts, and all proper inferences which the jury might draw from the facts, that are calculated to sustain the verdict. This court does not concern itself with conflicts in the evidence or with the credibility of the witnesses. It was proper for the court to permit the jury to say whether the appellee Baugh was entitled to a defense of Branum's action against Baugh by USF&G under his policy purchased from them.

The case of *Slinkard* v. *Babb, Wilson* (1954), 125 Ind. App. 76, 105 N. E. 2d 342, states:

> "It is well settled that the trial court may, and it is its duty upon proper request, to direct a verdict for the defendant in cases where the evidence most favorable to the plaintiff, together with all reasonable inferences which a jury might draw therefrom is insufficient to establish one or more facts essential to the plaintiff's right of action. [Citing cases.] The foregoing rule only applies where it clearly appears that the evidence fails to establish one or more of the facts essential to a recovery, and where the facts and the reasonable inferences which may be drawn therefrom are not disputed and where the only possible inference to be drawn therefrom is favorable to the party asking the instruction. [Citing cases.]" *Geary* v. *Chicago & Calumet District Transit Co.* (1969), 144 Ind. App. 192, 245 N. E. 2d 187.

This court cannot, as a matter of law, say that under the evidence heretofore set out the evidence fails to establish one or more of the essential elements to a recovery, nor can we say that the reasonable inferences which may be drawn from the evidence are without conflict and favorable only to the defendant, USF&G. Therefore, we are of the opinion that the evidence was sufficient to present a question of fact to the jury as to whether or not the appellee, Baugh, had coverage afforded him by the USF&G policy.

Appellant USF&G introduced its evidence in chief in an attempt to sustain its defense and if such evidence, either directly or by fair inference, tends to sustain any defense on the part of the appellant USF&G within the issues, the giving

of the instruction for a directed verdict at the close of all the evidence would be error. *Millett* v. *Aetna, etc., Savings Co.* (1919), 70 Ind. App. 451, 122 N. E. 344.

Appellant, USF&G, pleaded in its second affirmative paragraph of answer a policy violation by the appellee's not giving it notice required under the policy. There was evidence given by the appellant that the appellee did not give prompt notice to appellant under its Contractor's Operations Liability Policy. There is further evidence, given by the appellee, that the appellee did not give prompt notice to USF&G pursuant to the terms of the policy. This certainly was an issue to be passed upon by the jury and the court did not err in refusing to give the instruction for a directed verdict at the close of all the evidence.

Appellant objected to appellee's tendered final written instructions numbered 1 and 5 and timely filed written objections thereto.

Appellee's tendered final Instruction No. 1 reads as follows:

"In cases of uncertainty the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist; and also that the language in an insurance policy is framed and formulated by the insurance company; and if that language is in any respect doubtful in meaning or ambiguous or susceptible of two constructions, then it is the duty of the jury to place the construction upon the language which is most favorable to the plaintiff, and resolve any doubt, uncertainty or ambiguity against the insurance company.

"When a doubt arises in respect to the application, exceptions to, or limitations to liability, you will adopt the construction most favorable to the plaintiff."

Appellant's written objections were as follows:

"Comes now the defendant and objects to the giving by the court of plaintiff's tendered Instruction No. 1 for the reason that it permits the jury to construe the language of the policy of insurance sued on and to determine for itself whether the jury considers any provisions to be doubtful in meaning or ambiguous or susceptible to construction. The construction of the policy in question is the function of the

court and should be covered by instructions to the jury, and the jury should not be permitted to place its own interpretation or construction on any pertinent part of the policy. The instruction permits the jury to entertain doubt with respect to the application, exceptions to or limitations to liability and to be governed by its own interpretation, notwithstanding any construction that the court may give to the jury in its instructions."

The principal objection of appellant, as can readily be seen, was that appellee's tendered Instruction No. 1 permitted the jury to construe the language of the policy sued on and to determine for itself whether the jury considers any provisions to be doubtful in meaning or ambiguous or susceptible to construction. Appellant further complains that the construction of the policy in question is a function of the court and should be covered by instructions to the jury and the jury should not be permitted to place its own interpretation on any pertinent part of the policy.

Where there is such ambiguity in the policy that the policy is doubtful in meaning or ambiguous or susceptible of two constructions and if it be, then it is the duty of the jury to place the construction upon the language most favorable to the plaintiff and to resolve any doubt or ambiguity against the insurance company.

Appellee Baugh contended that the ambiguity, if any, was under the definition of hazards, Division 1—Premises-Operation, where the policy said: "The ownership, maintenance or use of premises, *and all operations*" and the part in dispute as being ambiguous are the words "and all operations". Appellant argues that the construction of the policy in question is a function of the court and should be covered by instructions to the jury and the jury should not be permitted to place its own interpretation or construction on any pertinent part of the policy, that the instruction permits the jury to entertain doubt as to the application, exceptions or limitations to liability and to be governed by its own interpretation not-

withstanding any construction that the court may give to the jury in its instructions.

Appellee contends that its Instruction No. 1 was taken from *Appleman Insurance Law and Practice* and we find that it was. It is the law in the State of Indiana that the construction of a contract in a case tried before a jury is the sole responsibility of the trial judge and the construction of the contract is not to be considered by the jury, except where the contract is so ambiguous that it may be susceptible to more than one construction. If the language of the contract is in any respect doubtful in meaning or ambiguous or susceptible of two constructions, then it is the duty of the jury to place the construction upon the language which is most favorable to the plaintiff and resolve any doubt, uncertainty or ambiguity against the insurance company. It was the insurance company which wrote the contract and created the ambiguity and it ceases to be a question of law, but now becomes a question of fact for the jury.

Appellant cites the case of *Union Life Ins. Co.* v. *Jameson* (1903), 31 Ind. App. 28, 67 N. E. 199, and each of the parties hereto discuss that case at length in their respective briefs.

In this case the appellee obtained a judgment on a policy of insurance on which the applicant signed the following statement:

" 'I, the applicant for insurance, hereby declare and warrant that I am not now afflicted with any disease or disorder, so far as I know, and that I do not now, and will not, use intoxicating liquors to excess, nor practice any pernicious habit that obviously tends to shorten life, and that the foregoing application, and this declaration, together with the answers and explanations made, or to be made, to the medical examiner to the various questions in parts one and two of this application and examination shall constitute a warranty, and shall form the exclusive and only basis of the contract between myself and the Union Life Insurance Company of Indiana.' The insured also made certain answers to questions as follows: 'To what extent do you use intoxicating liquors? (Avoid the use of the word

'temperate,' it is indefinite.) A. A glass of beer occasionally. State full particulars as to what your habits are in this respect. A. Very moderate. Have you ever used them to excess, or to the extent of impairing your health? A. No.' "

Appellant defended on the ground that the appellee was an excessive user of intoxicating liquors and that such dissipation contributed to his death on October 12, 1900, after he had signed said application on April 29, 1899.

Appellant complained of a further instruction given the jury, in the *Union Life* case, which stated:

> " 'A contract of insurance, like the one in the case at bar, is by the court liberally construed with a view to effectuate its purpose. The language of the policy and of the interrogatories and provisions of the application are prearranged by the company. In its preparation the insured has no part. Whatever there may be in the language so prepared by the company which has any tendency to defeat the main purpose of the contract should be strictly construed against the company. If there is any ambiguity in an interrogatory propounded to the applicant, it should be construed most strongly against the company, and most favorably to the insured, in whose favor all doubts should be resolved.' "

The court said, further:

> "While the above instruction contains a correct statement of a principle of the law governing the construction of contracts of insurance . . . yet, as the language indicates, it is a rule for the guidance of courts in the construction of such contracts. It has been so long and often held that it is the duty of the court, and not the jury, to construe a contract that is plain and unambiguous, that the citation of authorities is unnecessary."

The court held that inasmuch as there was no attempt made to explain any supposed ambiguity it was error to leave its construction to the jury.

In the case at bar USF&G's contract with the appellee was introduced into evidence and made a part of the record. It is presumed that the contract was read to the jury, or that

the jury inspected and read it. It appears to this court that under the definition of hazards, Division 1—Premises—Operation the words "and all operations" stand out like a sore thumb. These words naturally attract the attention of persons examining the insurance policy or attempting to construe the same and in our opinion are most ambiguous.

The *Union Life* case is distinguishable from the case at bar for the reason, as the court in that case said, there is no ambiguity in the interrogatories in the application for insurance and in the policy itself. There being no ambiguity it was error to permit the jury to construe the policy.

In the case at bar there is an ambiguity and, in our opinion, it was proper for the trial court to give appellee's tendered Instruction No. 1, thereby permitting the jury to construe the contract of insurance.

Following the rules of construction as heretofore laid down by this court and the Supreme Court of Indiana the contract must be construed most favorably to the appellee.

Appellant contends the USF&G policy sued on is not ambiguous and the definition of hazards insured against and exclusions are all clearly stated in language that is plain and unambiguous and it is error to leave its construction to the jury. A careful review of the contract and of the parts thereof set out, leads this court to the conclusion that the contract is ambiguous and could be confusing to any individual not adept at preparing or construing insurance contracts.

Exhibit A, the same being USF&G's policy issued to Baugh, under the term "Premises—Operations" covered the appellee for ownership, maintenance or use of premises, *and all operations.*

The term "and all operations" is ambiguous and could cover many operations of appellee, and the fact that the truck was a mile off appellee's premises would not make the second amended complaint bad, as the appellee had his truck at Branum's place of business primarily for pulling tools to do

leveling of rock for Mr. Branum, and he also had the truck there for the purpose of welding a pump and an oil drum to make the same more stable, which oil drum was affixed to the truck to keep it from bouncing around and which was not a part of the truck, which under business parlance and thinking and under the interpretation of the average person engaged in business might reasonably be construed to be a part of appellee's operations.

The parties hereto have stipulated that the vehicle owned by appellee and at Branum's premises was an automobile within the meaning and terms of the policy. The evidence is clear that the vehicle owned by appellee had been used by appellee's son to haul a back-hoe to Branum's place of business and the back-hoe had been used to level the rock and land around Branum's building and to level the rock inside the building preparatory to laying a concrete floor. The evidence was, further, that the grading work was completed and appellee's son drove the truck into Branum's garage at Branum's direction. The remaining question is—was the oil drum being welded a part of the motor vehicle?

The parties agreed that if the oil drum was a part of the truck, which, under the policy, was considered an automobile, no coverage would be afforded to appellee. *Union Life Insurance Co.* v. *Jameson, supra; Zenor* v. *Johnson, et al. (1886)*, 107 Ind. 70; *Ford* v. *Cleveland* (1942), 112 Ind. App. 420, 44 N. E. 2d 244.

Although appellee alleged in his second amended complaint that the oil drum was attached to one of said Baugh's trucks it was a question of fact for the jury to determine, together with whether it became a part of the truck. The court gave defendant's tendered final Instruction No. 5, which reads as follows:

"DEFENDANT'S INSTRUCTION NO. 5

"Before the Robert Branum accident can be considered within the coverage of the USF&G policy sued on, you must

find that plaintiff has proved to you by a preponderance of the evidence each of two things: first, that the accident arose out of Gale Baugh's operations and, second, that the oil drum in question was not attached to the truck in question so as to become a part thereof. Failing to prove either one or both of these matters by a preponderance of the evidence, plaintiff would not be entitled to recover in this case."

From the general verdict of the jury and considering defendant's Instruction No. 5, we must conclude that the jury did not believe the oil drum in question was attached to the truck and did not believe it became a part of the truck. This is, in essence, what they said by their verdict.

We are of the opinion that the contract was so ambiguous that the court properly submitted appellee's tendered Instruction No. 1 to the jury.

And further, the court gave appellee's Instruction No. 4 and to which appellant did not object, which reads as follows:

## "[PLAINTIFF'S] INSTRUCTION NO. 4

"If you find that the oil barrel and pump on which Robert Branum started to weld, or one similar to it, was used to supply diesel fuel to Baugh's diesel-powered equipment in the usual course of Baugh's business, then I instruct you that it was a part of Baugh's business operations as a Contractor."

The uncontradicted evidence was that this barrel was used to supply diesel fuel to Baugh's diesel powered equipment. This instruction properly defined the jury's responsibility if the jury believed that the truck was being repaired or maintained on the date of the accident.

Although we are of the opinion that appellee's Instruction No. 1 was properly given to the jury in this case, we are further of the opinion that if it were error, such error was waived by appellant's failure to object to appellee's tendered Instruction No. 4 given to the jury, and further, considering

all of the instructions of the court, if it were error, it was harmless error.

In the case of *Paton* v. *Ferrell* (1969), 144 Ind. App. 124, 244 N. E. 2d 439, citing *Peckham* v. *Smith* (1960), 130 Ind. App. 452, 165 N. E. 2d 609, the court said:

" '[W]hile it is error to give instructions on an issue not supported by evidence, the giving of such instructions, does not require a reversal where no prejudice resulted to appellant.' "

The same rule would apply to the giving of any instructions where no prejudice resulted to appellant. *Hayes Freight Lines* v. *Wilson* (1947), 226 Ind. 1, 77 N.E. 2d 580.

Plaintiff's tendered final written Instruction No. 5 was read to the jury by the court, to which appellant timely filed its written objections, and reads as follows:

"The law favors compromise and settlement of disputes between parties, where no fraud or deception has been practiced and the settlement is fully understood and freely and voluntarily made and entered into. It is the evidence of this case that Wabash Casualty Insurance Company has agreed to pay Gale Baugh $18,760.00. This agreement with Wabash Fire and Casualty Insurance Company is not an admission of liability on the part of Wabash Fire and Casualty Insurance Company and should not be taken into consideration during your deliberations as to the liability of United States Fidelity and Guaranty Company."

Appellant's objections thereto read as follows:

"The defendant objects to the giving of plaintiff's tendered Instruction No. 5 for the reason that the instruction, in telling the jury that plaintiff's agreement with Wabash Fire and Casualty Insurance Company should not be taken into consideration during the deliberations as to liability of the United States Fidelity and Guaranty Company constitutes an invasion of the province of the jury. The fact that the agreement by Wabash Fire and Casualty Insurance Company to pay $18,760.00 is an item of evidence which the jury is entitled to consider for whatever the jury may deem it is worth as evidence in this case."

Appellant cites the case of *Board of Commissioners, etc.* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571, which case sets out the trial court's duty to instruct the jury as to the law of the case, which instructions must be within the issues formed by the pleadings and supported by evidence produced during the trial.

This case holds further:

> "In such instructions the court is limited in that the court must not invade the province of the jury with respect to any fact on which the jury is required to make a determination in arriving at its verdict. If the court invades the province of the jury and such invasion is prejudicial to either of the parties then error results which cannot be cured by other or subsequent instructions."

In the case at bar, wherein USF&G claimed Branum's accident was not covered by its policy and refused to defend his suit against Baugh and wherein Wabash also refused to defend under its policy and the Baughs defended at their own expense and Branum recovered judgment, which was affirmed on appeal and which Baugh paid by the Monroe County sheriff levying on his property, the levy included the amount of judgment, interest accrued and attorney fees and all other expenses incidental to appeal in the total amount of $41,279.89. Gale Baugh filed his complaint against USF&G on its policy and against Wabash on its policy. Shortly before the trial of this case Baugh received $18,760 from Wabash for which he gave a convenant not to sue and the case against USF&G was ordered tried separately before a jury, which returned its verdict for $22,519.89 in favor of Baugh. This court has no fault to find with the law presented it by USF&G in the case of *Board of Commissioners, etc.* v. *Flowers, supra,* but feels the law set forth in said case is not applicable.

The law does favor compromise and settlement of disputes between parties where no fraud or deception has been practiced and where the agreement is understood and freely and voluntarily made and entered into. The court in-

structed the jury correctly that Wabash had agreed to pay Baugh $18,760 and that the agreement with Baugh was not an admission of liability on the part of Wabash.

The court further instructed the jury that the payment to Baugh by Wabash should not be taken into consideration during the jury's deliberation as to the liability of USF&G. It must be noted that the last mentioned part of the instruction refers to the matter of *liability* of USF&G and is limited thereto and does not in any way prejudice USF&G for the reason that the instruction definitely was helpful to USF&G and a correct statement of the law.

Assuming, without admitting, the instruction was erroneous, it nevertheless was beneficial to USF&G in that by the computation shown in the verdict the jury awarded appellee a judgment for $22,519.89, which was the exact difference between appellee's original loss through execution and the amount paid by Wabash for a covenant not to sue. USF&G not being damaged by the instruction cannot be heard to complain.

And now, lastly, we shall consolidate the specifications of insufficient evidence and the verdict being contrary to law.

From the evidence heretofore set forth in this opinion we are of the opinion that the evidence was sufficient to sustain the verdict, as it is this court's duty to determine only if there was evidence sufficient to sustain the verdict and we are not permitted to, nor shall we, weigh the evidence. *Brennan* v. *Reydell* (1962), 134 Ind. App. 298, 187 N. E. 2d 492.

We cannot agree with appellant's contention that the decision of the court is contrary to law. The rule is well settled in Indiana that:

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 103 N. E. 2d 669.

The evidence being most conflicting, we conclude that reasonable men could easily reach opposite conclusions, and the evidence would not lead but to one conclusion. Reasonable men could hardly be expected to all come to the same conclusion under the evidence in this case.

Finding no reversible error, the judgment of the trial court is affirmed.

Costs versus appellant.

Cooper, J., concurs; Carson and Sullivan, JJ., concur in result only.

NOTE.—Reported in 257 N. E. 2d 699.